James Bagnall, County Judge, et al. v. J.A. Breithaupt














Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Opinion Withdrawn 8/2/00
IN THE
TENTH COURT OF APPEALS
 

No. 10-99-354-CV

Â Â Â Â Â JAMES BAGNALL,
Â Â Â Â Â COUNTY JUDGE, ET AL.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellants
Â Â Â Â Â v.

Â Â Â Â Â J. A. BREITHAUPT,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 13th District Court
Navarro County, Texas
Trial Court # 97-00-07853-CV
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â 
Â Â Â Â Â Â J. A. Breithaupt filed suit against James Bagnall, County Judge of Navarro County, and
Betty Armstrong, Olin Nickleberry, William Baldwin, and Paul Slaughter, the Commissioners
of Navarro County, (collectively, âAppellantsâ) alleging that they improperly classified
numerous county roads on and around his property. Appellants filed a âMotion for Summary
Judgment and Plea to the Jurisdictionâ premised on sovereign immunity. The court granted
the motion in part, but did not otherwise rule on the allegations of the motion. Appellants seek
to appeal under section 51.014(a) of the Civil Practice and Remedies Code. See Tex. Civ.
Prac. & Rem. Code Ann. Â§ 51.014(a) (Vernon Supp. 2000). However, because the courtâs
order does not deny any of Appellantsâ claims, we conclude that they have not obtained a
ruling from which they can bring an interlocutory appeal under the statute. Accordingly, we
dismiss the appeal for want of jurisdiction.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â PER CURIAM
Before Chief Justice Davis
Â Â Â Â Â Â Justice Vance and
Â Â Â Â Â Â Justice Gray
Appeal dismissed for want of jurisdiction
Opinion delivered and filed May 10, 2000
Do not publish



way you decided you wanted to have the opportunity to have
your decisions or your disputes settled by your fellow citizens.  And the
system wonÂt work without the active participation of the citizenry.Â  You
decided you wanted to have the opportunity to do this.

Â Â Â Â Â Â  And you need to look at it from this point
of view.Â  This time itÂs somebody elseÂs problem.Â  The next time it might be
your problem.Â  It might be your loved oneÂs problem.

(Mason Br. at 9 (quoting 6 R.R. at
5-6) (italics added in Mason).)Â  Mason argues: 

Although the trial judge gave the venire good
information, he also gave the venire additional information, and it is this
additional information about which appellant is complaining.Â  The trial judge
told the venire that he was quite capable of handling this case and,
inferentially, that involving the venire was a waste of the venireÂs time.Â  The
trial judgeÂs subsequent comments effectively explain why a jury trial was a
waste of everyoneÂs time.

(Mason Br. at 9-10.)Â  Fairly read, the
trial judgeÂs admonitions, perhaps in jest, concern the peopleÂs determination
of the structure of the judicial system rather than MasonÂs election of a jury
trial or the merits of MasonÂs case.Â  

Â Â Â Â Â Â Â  Next,
Mason complains of the following italicized admonitions:

Â Â Â Â Â Â  ThereÂs no magic formula to
it.Â  Over 90 percent of cases that are filed in these United States of America are settled.Â  And theyÂre settled in two manners.Â  If theyÂre a
civil case theyÂre usually settled by an agreement between the parties.Â 
DoesnÂt matter whether the judge approves it or not.

Â Â Â Â Â Â  Criminal case, itÂs settled by
an agreement between the parties with the approval of the Court.Â  The Court has
to approve the agreement.Â  And like I said, over 90 percent of those cases are
settled.Â  And theyÂre not settled because we went back to the office and threw
darts at a board and said where theyÂre going to land.

Â Â Â Â Â Â  ItÂs because jurors have told
us how they want particular cases under particular situations under certain
circumstances settled.Â  And we use that in determining similar cases that come
up in the future how to determine them.Â  And most of the time nobody wants
to beat their head on a wall.

Â Â Â Â Â Â  If they know enough information
and they can determine how they think an Ellis County jury will settle a
particular case under particular circumstances, then they can settle it.Â  On
the other hand, the systemÂs also designed if you want to beat your head on the
wall, you can do that too.Â  ItÂs your privilege.

Â Â Â Â Â Â  An [sic] so if you have anyÂif either
sideÂthat is, on either side of the civil case or either side of a criminal
case, the prosecution or defense, has a disagreement as to how an Ellis County
jury would settle this case, then either side has the right to have a jury
determine how itÂs going to be settled.Â  And thatÂs what weÂre going to be
doing.

(Mason Br. at 10 (quoting 6 R.R. at
8-9) (italics added in Mason).)Â  Mason argues:

Â Â Â Â Â Â  Here the trial judge is telling the venire
that one of the parties is being unreasonable.Â  From experience, the trial
judge already knew how the case would turn out.Â  The trial judge attempts to
qualify his statements so that they could be construed to apply to either
party.Â  In the context of his other comments, however, the venire would take
his comments to be a reference to the defendant.Â  The prosecutors would know
precisely what an offense would be worth in Ellis County.Â  The venire would be
hard pressed to assume the prosecutor would not know how to evaluate a case and
hard pressed to assume the prosecutor would make an unreasonable settlement
offer.Â  The only person who might balk at a reasonable offer is the defendant,
who would actually have to serve the time.Â  In that context, the implicit
reference is to the number of years a case is worth.Â  That is, the question of
guilt is a given, and the punishment is the item in controversy.Â  These
comments undermine the presumption of innocence.

(Mason Br. at 10-11.)Â  The trial judge
admonished the jury that the parties could not agree on the safe harbor of a
plea to the court, and that one or both parties instead preferred to risk the
uncertainties of trial.Â  Fairly read, again, the admonitions do not signify
that MasonÂs election of a jury trial is unreasonable.[1]

Â Â Â Â Â Â Â  Next,
Mason complains of the following italicized admonitions:

Â Â Â Â Â Â  Before you can convict somebody
youÂll have to find the evidence is sufficient to convince you and your
otherÂ11 other fellow jurors that somebodyÂs guilty beyond a reasonable doubt.

Â Â Â Â Â Â  How much proof is that?Â  How
much proof does it take to convince 12 jurors assembled at random from across
the county that you proved your caseÂtheir evidence is sufficient to prove it
by a preponderance of the evidence or on the other hand in a criminal case
beyond a reasonable doubt.

Â Â Â Â Â Â  You tell us that.Â  ItÂs very subjective,
but I assure you that the judge and the attorneys get a feel of what it
takes so you set those standards.Â  Like I say, youÂre only here to judge the
case that youÂre on, but your verdict becomes part of the information thatÂs
stored in our memory as to how similar cases of like nature under similar
circumstances ought to be settled because you told us how you wanted them settled.

(Mason Br. at 11-12 (quoting 6 R.R. at
10-11) (emphasis added in Mason).)Â  Mason argues:

The burden of proof is not
subjective.Â  The burden of proof is objectiveÂit is beyond a reasonable doubt.Â 
If the juror retains a reasonable doubt, the State has not met its burden.

Â Â Â Â Â Â  The weight and credibility
determinations are subjective.Â  That is where jurors have latitude and
discretion.

Â Â Â Â Â Â  The comments, however, had
already done their damage because they removed one of the major lynchpins of
the a criminal proceedingÂthe burden of proof.Â  The trial judge announced the
burden of proof and then promptly told the venire it was a subjective standard,
that is, that the jury could decide for itself what it meant.

Â Â Â Â Â Â  The trial judge also indicated both he and
attorneys already knew how jurors in Ellis County applied the
beyond-a-reasonable doubt standard.Â  Tying this in with the trial judgeÂs other
comments, the trial judge was also saying he already knew how the case should
turn out.Â  As explained above, without specifying appellant specifically, the
trial judge was nevertheless inferentially identifying appellant as being
unreasonable by insisting upon a jury trial.Â  The comments undermine the
presumption of innocence.

(Mason Br. at 12 (citing 6 R.R. at
10-11).)Â  However, Âit is plain that prospective jurors may form their own
definitions of proof beyond a reasonable doubt and they are not challengeable
for cause based upon the type and amount of evidence they require to reach that
level of confidence.ÂÂ  Murphy v. State, 112 S.W.3d 592, 598 (Tex. Crim.
App. 2003); accord Howard v. State, 941 S.W.2d 102, 127 (Tex. Crim. App.
1996); Garrett v. State, 851 S.W.2d 853, 859 (Tex. Crim. App. 1993).Â 
The trial judgeÂs admonition that the jurors have considerable liberty in determining
what quantum of evidence persuaded them beyond a reasonable doubt was not
improper.

Â Â Â Â Â Â Â  Lastly,
Mason complains of the following italicized admonitions:

Â Â Â Â Â Â  All right.Â  And in criminal
cases we have two phase trials, what they call bifurcated trials, guilt or
innocence and punishment phase.Â  And the first phase of the case which is
guilt-innocence phase, the jury hears and is permitted to hear anything under
the law, under the rules theyÂre allowed to hear that is relevant to the issue
of is the defendant guilty of the offense with which theyÂre charged?

Â Â Â Â Â Â  You donÂt hear any evidence
of whether a defendant has been arrested 100 times before or has never been
arrested before in their life generally.Â  You donÂt hear that theyÂve got a
criminal record or they donÂt have a criminal record.

Â Â Â Â Â Â  Generally you donÂt hear that
they have invented the cure for cancer or they go home and kick their dog and
steal their grandmotherÂs social security check and go out and buy dope with
it.

Â Â Â Â Â Â  You donÂt hear that in the
guilt or innocence phase generally because itÂs not relevant to the issue
of whether or not they committed the offense with which theyÂre charged.Â  So in
the guilt-innocence phase of the case theyÂre concentrating on that.

Â Â Â Â Â Â  Whether somebodyÂs a good guy or a bad guy,
you get to hear that later if we get that far.

(Mason Br. at 13 (quoting 6 R.R. at
65-66) (emphasis added in Mason).)Â  Mason argues:

A defendant is not concerned about the jury
learning positive information about him.Â  For that matter, the prosecutor too
probably has little interest, one way or the other, regarding the juryÂs
learning positive things about the defendant.Â  Of particular interest to both
the prosecutor and the defendant is the jury learning negative information
about him, particularly during the trial on guilt or innocence.Â  The trial
judge can make reference to good information, but the comments that will stick
with the venire are those indicating that may be additional bad information
that the jurors will not be allowed to hear until the punishment phase.

(Mason Br. at 13.)Â  Fairly read,
again, the trial judgeÂs admonitions do not effectively imply that evidence of
MasonÂs bad character exists.

Â Â Â Â Â Â Â  The trial judgeÂs
qualification of the venire panel did not vitiate the presumption of innocence.Â 
Mason failed to preserve a complaint for appellate review.Â  We overrule MasonÂs
issue.Â  

Â Â Â Â Â Â Â  Having
overruled MasonÂs sole issue, we affirm.

TOM GRAY

Chief Justice

Before Chief Justice Gray,

Â Â Â Â Â Â Â  Justice Vance, and

Â Â Â Â Â Â Â  Justice Reyna

Â Â Â Â Â Â Â  (Justice Vance dissenting)

Affirmed

Opinion delivered and filed September 12, 2007

Publish

[CRPM]









Â Â Â Â Â Â Â Â Â  [1]Â Mason also complains of
the following italicized admonitions:

The first basic thing
[in] every criminal case every defendant is presumed to be innocent.Â  That
doesnÂt mean that they are innocent.

Â Â Â Â Â Â Â Â  What it means is theyÂre
presumed innocent, that the presumption of innocence standing alone in and of
itself without any other information, just the presumption of innocence is
sufficient to acquit a defendant unless the State meets its burden of proof and
proves the defendantÂs [guilt] by the standard the law has set.

(Mason Br. at 11 (quoting 6 R.R.
at 48) (bracketed alterations added by Mason) (emphasis added in Mason).)Â 
Mason argues: Â ÂOnce again, the trial judge gave the venire largely correct
information, but he also gave additional information.Â  This additional
information emasculated the presumption of innocence.Â Â (Mason Br. at 11.)Â  In
this regard, MasonÂs issue is inadequately briefed.Â  See Tex. R. App. P. 38.1(h); Russeau v.
State, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005), cert. denied, 126
 S. Ct. 2982 (2006); Cardenas v. State, 30 S.W.3d 384, 393 (Tex. Crim.
App. 2000); Wyatt v. State, 23 S.W.3d 18, 23 n.5 (Tex. Crim. App. 2000).