Jason Damon v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-058-CR

     JASON DAMON,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the Criminal District Court No. 1
Dallas County, Texas
Trial Court # F00-01137-H
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Jason Sean Damon appeals his conviction by a jury of the offense of aggravated assault. The
jury assessed his punishment at ten years' confinement in the Texas Department of Criminal
Justice, Institutional Division. He urges in two issues that the evidence is not legally sufficient
to sustain his conviction and that the trial court erred in sustaining the State's objection to the
defense argument about punishment alternatives. We affirm.
      In reviewing the legal sufficiency of the evidence to support a conviction, we view all the
evidence in the light most favorable to the verdict. Cardenas v. State, 30 S.W.3d 384, 389-90
(Tex. Crim. App. 2000); Narvaiz v. State, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992). The
critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. McDuff v. State, 939
S.W.2d 607, 614 (Tex. Crim. App. 1997). This standard gives full play to the responsibility of
the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct.
2781, 2789 (1979).
      Where the issue of self-defense is raised, this court must determine whether, after viewing all
the evidence in the light most favorable to the prosecution, any rational trier of fact would have
found the essential elements of the offense beyond a reasonable doubt and also would have found
against the appellant on the defensive issue beyond a reasonable doubt. See Saxton v. State, 804
S.W.2d 910, 914 (Tex. Crim. App. 1991).
      Emma DePriest testified that on the morning in question she was working as a prostitute in
the Harry Hines area of Dallas when Damon approached her as she was talking with her
girlfriends. She said she asked him if he wanted a date and he said he did. She indicated that
Damon told her he had one hundred dollars. She stated that he followed her car in his car until
she found a secluded parking lot. She described his clothing as a security uniform. She explained
that when she went to the back of his car and asked him for the money, he indicated that he did
not have any. She said that she told him he knew where he could find her when he found the
money, and then walked away. She said that was the last thing she remembered before she was
stabbed in the back of the neck. She stated that altogether she believes that she was stabbed five
or six times.
      DePriest testified that at one point the knife was in her neck and she and Damon were
struggling over it. She said she cut her hand very badly. She stated that the next thing she
remembered was running to get away. She indicated that she ran out to the street seeking help. 
      DePriest denied that Damon ever told her that he just wanted to talk to her or that she was too
pretty to be doing that kind of work. She denied being mad because Damon had no money,
indicating that such a circumstance was common. She acknowledged numerous convictions,
including convictions for possession of a controlled substance, possession of stolen property,
unauthorized use of a motor vehicle, prostitution, and public lewdness.
      Damon testified that he was employed as a security officer and was a military police officer
in the Army Reserve. He indicated that he carried a knife with him to assist him in opening bags
of money. He said the incident in question happened one morning as he was on his way to work. 
He stated that after he told DePriest that he had no money and he had put his wallet back in his
pocket, he saw her with her hand up with a knife or pointed object, up near her shoulder. He
indicated that she brought the object down like it was in her hair “or something.”
      Damon testified that as DePriest was bringing the object down, she moved forward with her
body, knocking him down. He said when that happened, he reached for his knife, trying to get
away. He indicated she was on top of him. He stated that he thrust the knife in her general
direction. He said that at that time he did not know if the knife contacted her. He related that he
got away and stumbled to his car.
      Damon testified that after getting away he went home. He said that on the way home he
realized that he had suffered a severe cut on his thumb. He indicated that he told his wife that “it
was a prostitute” as paramedics were tending to his thumb injury. Damon acknowledged that he
told the investigating officer that he did not know how he received the injury. He insisted that he
was not attempting to hide or conceal anything from the police, having consented to the police
searching his home to retrieve the security uniform he was wearing at the time of the attack.
      Damon testified that he told the investigating detective that his intention had been to talk to
DePriest about why she was in that line of business, but acknowledged that his actual intention was
to have sex with her. Damon insisted that at the time he used his knife he felt he was being
attacked. He indicated that he did not use more than reasonable force because DePriest had a knife
and was on top of him. He stated that he did not see how he could have cut himself with his own
knife.
      Damon testified that he could not recall whether he told a police officer at his home that a
prostitute had stabbed him. He acknowledged that all he could tell the police officer about what
had happened was that he remembered driving home and being cut. He said he told detectives he
had been attacked. He acknowledged, however, that he told Detective Dressler that he did not
know who stabbed him or how his finger got cut. He indicated that he was unsure as to whether
he or DePriest had cut his thumb.
      Vernell Howard testified that early on the morning in question he was sitting at his place of
employment facing a parking lot when he saw two cars come together into the lot. He indicated
that in three to five minutes he heard a lady screaming. He said he heard only about two outbursts
of screaming when one of the cars left the lot. He stated that he started walking towards a lady
whom he saw coming from his left. He related that a man in a truck asked him to stop traffic to
keep it from hitting her while the man called for help. Howard said the woman was running and
hollering, asking for help. He said she was bleeding very badly.
      Brett Chance, a firefighter paramedic for the Lake Cities Fire Department, testified that when
he responded to a call relating to the injury to Damon’s thumb, Damon told him he was stabbed
by an individual off of Harry Hines in Dallas. He related that Damon told him he had pulled up
to the side on Harry Hines to ask her why she did what she did for a living.
      Officer Joel Herrera testified that he responded to a stabbing call to Damon’s residence on the
morning in question. He indicated that he thought it odd that Damon kept staring at him while
paramedics were treating him. He said Damon looked at his wife and told him that he was not
going to do anything with the prostitute, just talk to her. He said that later, at the hospital, Damon
told him he was talking to the prostitute, there was a struggle, he was stabbed, and then he drove
home. Herrera indicated that when he asked Damon about abrasions on his knees, he said they
were from “when we fell.” Herrera said that when he asked Damon to repeat what he had said,
he said he could not remember. Herrera recovered Damon’s knife from the residence.
      Mark Davil, a fire rescue paramedic for the Dallas Fire Department, testified that upon
responding to a call he found DePriest lying in the middle of the street in a pool of about two or
three pints of blood. He indicated that when the left side of her neck was exposed, blood spurted
out. He stated that an effort to take or palpate a blood pressure was unsuccessful. He said that
her eyes dilated, which to him meant that she was not getting any blood to the brain. He related
that at one point there was no electrical activity of her heart and she was not breathing. 
      Wesley Popieluch testified that he is the branch manager of the security company by whom
Damon was employed. He said that when he called Damon to find out why he had not come to
work, Damon was very vague about what happened. He indicated that when he talked to him
about a week later, Damon was still vague, and said something about how two guys had jumped
a lady and he had tried to defend her. He related that Damon said several times that he was not
a coward.
      Detective Dan Cannon testified concerning his unsuccessful effort to find a weapon at the
scene of the assault. Keith Dressler testified that on the occasion in question he was a detective
with the Dallas Police Department. He said that he went to the hospital where Damon was being
treated for his thumb injury and talked to him outside his wife’s presence. He indicated that
Damon told him he had seen a blonde in a red convertible and did not think she should be out and
about. He related that Damon said he wanted to talk to her. He said that Damon indicated that
when the prostitute came up and asked him for the money, he told her he wanted to talk to her. 
Dressler stated that Damon told him that at that point he did not know what happened, but said
he believed that his thumb could have been cut by a knife. Detective Dresser acknowledged that
he had not preserved Damon’s statements at the time in a notebook or report, but put them on the
computer later in the day.
      Damon argues that the evidence is insufficient to support his conviction, urging that neither
the absence of a knife at the scene or the State’s plea for the jury to find DePriest more credible
disproved self-defense. As Damon acknowledges, the State does not have the burden to
affirmatively produce evidence to refute his theory of self-defense. Saxton, 804 S.W.2d at 913. 
Defensive evidence that is merely consistent with the physical evidence at the scene of the alleged
offense will not render the State’s evidence insufficient because the credibility of such evidence
is solely within the jury’s province, and the jury is free to accept or reject the defensive evidence. 
Id. at 914. A jury’s verdict of guilty is an implicit finding rejecting the defendant’s self-defense
theory. Id. We hold that the evidence is legally sufficient to support Damon’s conviction. We
overrule issue one.
      Damon urges in issue two that the trial court erred in sustaining the State’s objection to
defense argument concerning the limits of the court’s punishment options. Counsel for Damon
argued to the jury at the punishment phase of the trial that ”there is just no provision in Texas law
in cases of aggravated assault for a defendant to come in and throw himself on the mercy of the
court because in cases of deadly weapons our wise legislature has said only juries may consider
these cases if a defendant applies for probation.” The State objected on the basis that the Court
could give him deferred adjudication. After a brief exchange between counsel, the trial court
stated, “I’ll allow the State to answer the argument.” Damon’s counsel resumed argument,
stating, “Jason Damon could not come into this court and plead guilty with hopes of being found
guilty and given probation by the Judge.” At that point State’s counsel objected, stating, “Again,
that’s a misstatement of the law. It’s an entirely — it’s entirely within your discretion.” The trial
court then sustained the objection. At that point, Damon’s counsel replied, “Judge, you can’t find
him guilty and give him probation and that’s clear in the law.” The trial court then stated, “I’ll
overrule the objection. The State can answer the argument.” Damon’s counsel resumed argument
again, saying, “Counsel is trying to break up my continuity because they know what I’m saying
is true and the Court overruled his objection.” Inasmuch as the trial court ultimately overruled
the State’s objection, the trial court did not reversibly err in initially sustaining the objection. 
Even if we were to assume that it was error for the trial court to initially sustain the State’s
objection, this did not affect Damon’s substantial rights inasmuch as the trial court immediately
thereafter overruled the objection. To the extent Damon is complaining of error in the form of
the State’s objection, nothing is preserved for review because Damon made no objection to the
form of the objection at trial. Tex. R. App. P. 33.1(a)(1). We overrule issue two.
      The judgment is affirmed. 

                                                                         JOHN G. HILL
                                                                         Senior Justice

Before Chief Justice Davis,
      Justice Vance, and
      Senior Justice Hill (Sitting by Assignment)
Affirmed
Opinion delivered and filed on March 19, 2003
Do not publish
[CR25]