Christopher Michael Taylor v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-108-CR

     CHRISTOPHER MICHAEL TAYLOR,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 284th District Court
Montgomery County, Texas
Trial Court # 01-11-06846 CR
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Christopher Michael Taylor appeals his conviction by a jury of the offense of aggravated
robbery. The jury assessed his punishment at 75 years in the Texas Department of Criminal
Justice, Institutional Division. In three issues, he contends that the evidence was legally and
factually insufficient to support his conviction and that he was denied his right to effective
assistance of counsel. We affirm.
      Appellant contends in issues one and two that the evidence is legally and factually insufficient
to support his conviction. In reviewing the legal sufficiency of the evidence to support a
conviction, we view all the evidence in the light most favorable to the verdict. Cardenas v. State,
30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000); Narvaiz v. State, 840 S.W.2d 415, 423 (Tex.
Crim. App. 1992). The critical inquiry is whether, after so viewing the evidence, any rational
trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 
McDuff v. State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997). This standard gives full play to
the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence,
and to draw reasonable inferences from basic facts to ultimate facts. Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979).
      In reviewing a challenge to the factual sufficiency of the evidence, we begin with the
assumption that the evidence is legally sufficient. See Santellan v. State, 939 S.W.2d 155, 164
(Tex. Crim. App. 1997). We must view all the evidence without the prism of the "in the light
most favorable to the prosecution" construct. See Clewis v. State, 922 S.W.2d 126, 129 (Tex.
Crim. App. 1996). We ask "whether a neutral review of all the evidence, both for and against the
finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in
the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof." Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see
also Goodman v. State, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001).
      We must also remain cognizant of the factfinder’s role and unique position—one that the
reviewing court is unable to occupy. Johnson, 23 S.W.3d at 9. The jury determines the
credibility of the witnesses and may "believe all, some, or none of the testimony." Chambers v.
State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). It is the jury that accepts or rejects
reasonably equal competing theories of a case. Goodman, 66 S.W.3d at 287. A decision is not
manifestly unjust as to the accused merely because the factfinder resolved conflicting views of
evidence in favor of the State. Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997).
      Bobby Lynn Davenport testified that on August. 28, 2000, she was the manager of the
Chevron store where the robbery occurred. She identified State's exhibit 1 as the surveillance tape
taken at the time of the robbery.
      Jeannie Mims, a video analyst for the Houston Police Department, testified that the camera,
or several of the cameras, were out of focus. She indicated that she was not able to enhance the
video, but she did produce and identify several photographs from the surveillance tape. She stated
that the photographs showed the person committing the robbery holding what appeared to be a
large chrome pistol in his right hand and pointing it at the clerk.
      Brent Alexander Fotion testified that on August 28, 2000, he was the cashier at the Chevron
store at the time of the robbery. He indicated that he had wiped down the counter at the beginning
of his shift. Referring to appellant and Eddie Roy Taylor, a codefendant, Fotion testified that he
did not recall seeing either of them come into the store that evening prior to the armed robbery. 
He indicated that the robbery occurred around 10:30 to 10:45 p.m. He stated that while he was
doing paperwork, an assailant came through the east door of the store with a purple sweater lifted
up over his face. He said that as the assailant approached the counter, a gun came up on top of
the counter.
      Fotion testified that the assailant said, "This is no joke," or "This is not a joke. Give me all
the money out of the till." He indicated that the assailant had something up over his face during
the entire robbery. He said that he only had a second or so to get a full-fledged view of the
assailant. He related that he saw the assailant's left hand going to the counter itself. He stated that
he eventually gave the assailant the money. He testified that the assailant left the building after
getting the money.
      Fotion testified that he saw his assailant get into a four-door Fleetwood Cadillac after the
robbery. He indicated that he did not see which side of the car the assailant entered. When asked
if he could see anyone else in the vehicle, he replied, "No, I could not. Actually I could make out
the silhouette and that was about it." Later, he clarified his statement to indicate that he saw the
silhouette of a second occupant in the vehicle. He indicated that he reported the robbery to 911. 
He identified State's exhibit 6 as a weapon that looked like the weapon used in the robbery.
      Fotion testified that Conroe police requested he go home. He indicated that police called him
within an hour at his apartment, asking him to go to a Motel 6 on I-45. He stated that upon his
arrival he observed several individuals who were under arrest. He identified appellant as his
assailant.
      Raymond Howard Hill, a crime scene investigator for the City of Conroe Police Department,
testified that he went to the Chevron store after the robbery and was able to obtain fingerprints
from the area of the counter that the cashier had indicated as the area that the assailant might have
touched.
      Michelle Randolph, an ex-girlfriend of Christopher Taylor, testified that she was with
appellant, Eddie Roy Taylor, and others at Eddie Roy Taylor’s house on the evening of the
robbery. She indicated that appellant and Eddie Roy Taylor left the house somewhere between
10 and 10:45 p.m. She said appellant was driving the car when they left. She said they went to
the Motel 6 after they returned, where they encountered police.
      Officer Jimmy Chilcutt, a latent fingerprint examiner for the Conroe Police Department,
testified that he compared known fingerprints of appellant to a print taken from the counter where
the robbery occurred and that the print on the counter was that of appellant.
      Lenny Robinson, a friend and former co-worker of Eddie Roy Taylor, testified that at the time
of trial he was in prison for violation of his probation. He indicated that on the evening of the
robbery he was with appellant, Eddie Roy Taylor, and others at Eddie Roy Taylor’s place of
residence. He stated that on one occasion appellant and Eddie Roy Taylor left the residence and
were gone about an hour or so. He related that appellant had counted out a few dollars to Eddie
Roy Taylor after they had returned. He indicated that he did not know the amount. He said he
had seen appellant with a handgun at the house. He said Eddie Roy Taylor brought a shotgun
from the house to the car before they went to the Motel 6, saying that he wanted to sell it. He
reported that police confronted them at the Motel 6.
      Officer Joseph Farah testified that on August 28, 2000, he was a police officer with the
Conroe Police Department. He indicated that he was present when appellant was arrested at the
Motel 6. He stated that appellant was the driver of the car at the time of his arrest.
      James Scott Moore testified that on August 28, 2000, he was a deputy sheriff with the
Montgomery County Sheriff's Office, assigned to the patrol division. He indicated that while
patrolling just outside the city he observed a car, its motor running and someone sitting in the
driver's seat, parked to the side of a Citgo store. He related that he was suspicious because the
parking places in front of the store were all unoccupied. He said that a black male with no shirt
and baggy pants came out and got in the passenger side of the vehicle. He identified appellant as
the individual who had been in the store and who got into the passenger side of the vehicle. He
related that he obtained a license plate number of the vehicle, which was a large, dark-brown,
four-door Cadillac.
      Officer Moore testified that thereafter he received a dispatch concerning the robbery at the
Chevron store, involving a large, dark-brown Cadillac. He stated that he called the Conroe Police
Department on his radio and told them that he had seen a vehicle similar to the one described. He
provided them with a license plate number of the vehicle he had seen. He said that the Chevron
store is located approximately 8-9 miles from the Citgo store and that it would take about 10
minutes to get there. He estimated that the vehicle left the Citgo store probably about 10:05-10:06
p.m.
      Appellant argues that the evidence is legally and factually insufficient because the clerk at the
convenience store could not identify him and because the State’s fingerprint expert was not able
to make a positive comparison of his fingerprint to the fingerprint found on the store counter after
the robbery, until a year later. He also refers to various inconsistencies among the testimony of
the witnesses. We first note that while Fotion, the convenience store clerk, was unable at the trial
to identify appellant as his assailant, he testified that he did identify him as his assailant when he
was called to the scene of appellant’s arrest shortly after the robbery. Officer Chilcutt explained
that he was unable initially to make a comparison between appellant’s fingerprints and the
fingerprint left at the robbery because the print of appellant’s fingerprints was inadequate. He
indicated that he was able to make the comparison a year later because he had a better set of
appellant’s fingerprints. We fail to see how this evidence makes the evidence either legally or
factually insufficient. As Officer Chilcutt noted, fingerprints generally do not change over time. 
With respect to the various inconsistencies in testimony to which appellant refers, we have
previously noted that a decision is not manifestly unjust as to the accused merely because the
factfinder resolved conflicting views of evidence in favor of the State. Cain, 958 S.W.2d at 410. 
We hold that the evidence is legally and factually sufficient to support the conviction, and overrule
issues one and two.
      Appellant insists in issue three that he was denied his right to effective assistance of counsel
as guaranteed to him by the Sixth Amendment of the Constitution of the United States and article
I, sec. 19, of the Texas Constitution when his trial counsel failed to obtain a fingerprint expert to
controvert the state’s fingerprint evidence.
      We apply a two-pronged test to ineffective assistance of counsel claims. Strickland v.
Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Thompson v. State, 9 S.W.3d 808,
812 (Tex. Crim. App. 1999). First, appellant must show that his counsel's performance was
deficient; second, appellant must show the deficient performance prejudiced the defense. 
Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.
      In evaluating the effectiveness of counsel under the first prong, we look to the totality of the
representation in the particular circumstances of each case. Thompson, 9 S.W.3d at 813. The
issue is whether counsel's assistance was reasonable considering all the circumstances and
prevailing professional norms at the time of the alleged error. Strickland, 466 U.S. at 688-89, 104
S.Ct. at 2065. "[C]ounsel is strongly presumed to have rendered adequate assistance and made
all significant decisions in the exercise of reasonable professional judgment." Id. at 690, 104
S.Ct. at 2066. An allegation of ineffective assistance must be firmly founded in the record, and
the record must affirmatively demonstrate the alleged ineffectiveness. Thompson, 9 S.W.3d at
813. Our scrutiny of counsel's performance must be highly deferential, and every effort must be
made to eliminate the distorting effects of hindsight. Strickland, 466 U.S. at 689, 104 S.Ct. at
2065.
      The second prong of Strickland requires a showing that counsel's errors were so serious that
they deprived the defendant of a fair trial, i.e., a trial whose result is reliable. Id. at 687, 104
S.Ct. at 2064. In other words, appellant must show that there is a reasonable probability that, but
for counsel's unprofessional errors, the result of the proceeding would have been different. Id.
at 694, 100 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine
confidence in the outcome. Id. The ultimate focus of our inquiry must be on the fundamental
fairness of the proceeding whose result is being challenged. Id. at 697, 104 S.Ct. at 2070.
      There is nothing in the record to show that it was possible to obtain a fingerprint expert who
could controvert the State’s expert witness. Consequently, there is no showing that the
performance of appellant’s counsel was deficient, nor is there a showing that, but for his counsel’s
unprofessional errors, the result of the proceeding would have been different. Appellant argues,
without any support in the record, that there is a strong possibility that a defense fingerprint expert
might have had a different opinion from that of the State’s expert. As previously noted, however,
appellant’s burden on appeal is to show that there is a reasonable probability that, but for his
counsel’s professional error, the result of the proceeding would have been different. We overrule
issue three.
      The judgment is affirmed.

                                                                         JOHN G. HILL
                                                                         Senior Justice
Before Chief Justice Davis,
      Justice Gray, and
      Senior Justice Hill (Sitting by Assignment)
Affirmed
Opinion delivered and filed December 18, 2002
Do not publish
[CR25] [CRPM]