COURT
OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-239-CR
 
DONNA LIZETTE
AVILA                                                                                
APPELLANT
V.
THE STATE OF
TEXAS                                                                                    
STATE
------------
FROM COUNTY CRIMINAL COURT NO. 10
OF TARRANT COUNTY
------------
OPINION
------------
I. Introduction
Appellant Donna Lizette Avila
("Avila") was convicted of driving while intoxicated ("DWI"),
sentenced to twenty days' confinement in the Tarrant County Jail, and assessed a
$700 fine. On appeal, Avila challenges the legal and factual sufficiency of the
evidence to support her conviction. We will affirm.
II. Background Facts
At approximately 3:00 a.m. on December 11,
2000, North Richland Hills Police Officer Edward Roland Lynn ("Officer
Lynn") was "dispatched to a vehicle or a motorist assist at Harwood
and Davis." Officer Lynn found a black Honda sport utility vehicle sitting
at the intersection. Officer Lynn pulled in behind the Honda and activated his
emergency lights, and then exited his patrol unit to inspect the Honda. The
Honda's engine was running, its headlights were on, and the driver's side window
was down. Officer Lynn saw a person, later identified as Avila, lying over in
the driver's seat of the Honda, apparently passed out, with one foot on the
brake and the other foot resting on the accelerator.
In an effort to rouse Avila, Officer Lynn
"made several, loud, verbal commands" but received no response. He
then reached inside, placed the vehicle in park, and removed the keys from the
ignition. Officer Lynn opened the door, confirmed that Avila had a pulse, and
began to shake her. Avila, groggy and disoriented, was verbally abusive to
Officer Lynn. She sat up and tried to shut the car door, striking weakly at
Officer Lynn's chest. Avila refused to exit the Honda, closed the car door, and
attempted to drive away. She was unable to leave because Officer Lynn had
removed the keys from the ignition.
Due to Avila's threats of a lawsuit and
the absence of a functioning video unit in his patrol vehicle, Officer Lynn
called for an assist unit and a supervisor. He reopened the car door and
instructed Avila to exit the vehicle. When Avila again refused to get out and
began striking at him, Officer Lynn placed Avila's left wrist in a wrist-lock,
removed her from the Honda, and handcuffed her. Officer Lynn testified that
Avila's "movements were fairly slow and sluggish." Avila told Officer
Lynn that she was a cop, but refused to produce any form of identification. She
later informed Officer Lynn that she was a parole officer and a major in the
Army, and repeatedly accused him of "ruining her life." Officer Lynn
suspected that Avila was intoxicated.
Soon after Officer Lynn removed Avila from
the Honda and handcuffed her, Officer Dusty Scott and Sergeant Neil Maranto
arrived on the scene. Officer Scott positioned his patrol vehicle so that the
mobile video device would record the events at the scene. Officer Lynn then
attempted to administer a three-part sobriety test to Avila. Officer Lynn began
conducting a horizontal gaze nystagmus ("HGN") test; however, because
Avila was too close to the flashing emergency lights of the patrol vehicles, the
results were not reliable. In the interest of safety, the officers and Avila
then relocated to a nearby parking lot to continue the sobriety evaluation.
At the parking lot, Officer Lynn
instructed Avila to perform a one-leg stand test and a nine-step walk and turn
test, the second and third tests in the sobriety evaluation. During the one-leg
stand test, Avila "swayed while balancing, put [her] foot down at the count
of eight, [and] started over." In addition, Avila "had to use her arms
to balance." Avila exhibited three out of six possible clues while
performing the one-leg stand test. Officer Lynn testified that the observation
of two clues during the test indicates possible intoxication.
Officer Lynn then instructed Avila to
perform the nine-step walk and turn test, which requires the suspect to hold her
arms at her sides and take nine steps heel-to-toe while counting aloud, and to
then pivot on the ninth step and return in the same fashion. Officer Lynn
testified that Avila "started before the instructions were finished. [She]
[s]topped while walking to steady herself, didn't touch heal-to-toe [sic] on any
of the steps, use[d] arms for balance[,] . . . los[t] balance while turning and
turned incorrectly." Avila exhibited five out of ten possible clues during
the walk and turn test. Exhibition of two clues during the walk and turn test
indicates possible intoxication.
Sergeant Maranto then conducted a second
HGN test in the parking lot, with Avila positioned at a distance and facing away
from the flashing emergency lights. He noted a lack of smooth pursuit in both
her right and left eye, distinct nystagmus at maximum deviation in each eye, and
the onset of nystagmus in both eyes prior to forty-five degrees. Avila exhibited
six out of six possible clues during the HGN test. Maranto concluded that Avila
was intoxicated based on her poor performance of the field sobriety tests.
Maranto testified that, in his opinion, Avila had lost the normal use of her
mental and physical faculties.
Officer Lynn testified that he noticed the
smell of alcohol on Avila and had no doubt she was intoxicated after observing
her perform the field sobriety tests. Officer Lynn concluded that Avila had lost
the normal use of her physical and mental faculties and placed her under arrest
for DWI. The arrest took place at 3:26 a.m.
Officer Scott corroborated Officer Lynn's
testimony, stating that he had also detected the scent of alcoholic beverages on
Avila and had noticed that Avila's speech was slurred. Officer Scott's mobile
video unit recorded the field sobriety tests and Avila's subsequent arrest. The
tape was published to the jury during trial. However, due to an unexplained
mechanical problem, the majority of the sound was absent from the video
recording.
When Avila arrived at the police station,
the intoxilyzer room was occupied. Consequently, the video recording of Avila's
interview was delayed until approximately 4:40 a.m. Avila refused to provide a
breath sample after she received the statutory warnings regarding the potential
consequences of consenting to or refusing to provide a breath specimen. The
video tape of her refusal was published to the jury at trial.
Avila testified. She explained that, the
day before her arrest, she drove to Killeen to visit an old roommate. She stayed
the night in Killeen and left sometime between noon and 2:00 p.m. the next day
to drive back to Fort Worth. That evening, Avila participated in a dart
tournament at a local bar and consumed four alcoholic beverages between 7:00
p.m. and midnight. Then, Avila said she sat at the bar, drinking water and
talking with an acquaintance until the club closed for the night. Avila visited
in the parking lot for another half an hour before she left the premises at
approximately 2:30 a.m. She testified that, by the time she left the club, she
did not think there was any alcohol in her system.
After leaving the club, Avila recalled
that she stopped at a gas station and then drove to the post office to pick up
her mail. She testified that she was on her way home when she came to the
intersection of Harwood and Davis and discovered that the traffic light was
malfunctioning. She said the traffic signal would "flash twice, then stay
red and flash again and then stay red." Because she had "seen 15 to 20
people pulled over at that particular intersection[,]" Avila decided to
wait for the light to either cycle to green or turn to a steady flashing red
light. In the meantime, Avila testified she "was bent over in the passenger
seat going through [her] mail and reading from the [overhead] light." Avila
explained that Officer Lynn banged on the car window and startled her while she
was reading her mail and waiting for the light to change.
In rebuttal, Officer Lynn testified that
Avila would have had to turn right at the intersection to proceed home, yet her
vehicle was not in the right hand lane. He said there was no possibility that
Avila was awake and going through her mail when he approached her vehicle.
Finally, he said the light at the intersection in question was not
malfunctioning and had never done so.
III. Standard of Review
Avila complains that the evidence is both
legally and factually insufficient to support her conviction for DWI. In
reviewing the legal sufficiency of the evidence to support a conviction, we view
all the evidence in the light most favorable to the verdict. Cardenas v.
State, 30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000); Narvaiz v. State,
840 S.W.2d 415, 423 (Tex. Crim. App. 1992), cert. denied, 507 U.S. 975
(1993). The critical inquiry is whether, after so viewing the evidence, any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. McDuff v. State, 939 S.W.2d 607, 614 (Tex.
Crim. App.), cert. denied, 522 U.S. 844 (1997). This standard gives
full play to the responsibility of the trier of fact to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.
Ct. 2781, 2789 (1979).
In reviewing the factual sufficiency of
the evidence to support a conviction, we are to view all the evidence in a
neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim.
App. 1996). Evidence is factually insufficient if it is so weak as to be clearly
wrong and manifestly unjust or the adverse finding is against the great weight
and preponderance of the available evidence. Johnson, 23 S.W.3d at 11.
Therefore, we must determine whether a neutral review of all the evidence, both
for and against the finding, demonstrates that the proof of guilt is so
obviously weak as to undermine confidence in the verdict, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof. Id.
In performing this review, we are to give due deference to the fact finder's
determinations. Id. at 8-9; Clewis, 922 S.W.2d at 136.
Consequently, we may find the evidence factually insufficient only where
necessary to prevent manifest injustice. Johnson, 23 S.W.3d at 9, 12; Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).
IV. Application of Law to
Facts
Avila claims that the evidence is
insufficient to establish that she had lost the normal use of her mental or
physical faculties by reason of the introduction of alcohol into her body. She
argues that the video recordings from the scene and the police station
conclusively prove she was not intoxicated. Specifically, Avila argues that the
video of her arrest does not support the allegation that her speech was slurred,
which in turn contradicts the theory that she was intoxicated. However, as Avila
points out, the video from Officer Scott's patrol unit lacked fully functioning
audio. As a result, the tape neither supports nor contradicts testimony that
Avila was slurring her words. After weighing the evidence, the jury could have
reasonably concluded that the patrol unit video did not convincingly rebut other
evidence that Avila was intoxicated, i.e., had lost the normal use of her mental
and/or physical faculties.
Avila further contends that the police
station video tape, in which she refuses to provide a breath specimen, is
"critical" because it does not indicate that she was intoxicated.
However, the police station video was recorded approximately ninety minutes
after Officer Lynn first encountered Avila and administered field sobriety tests
to her. The police station video is brief, consisting only of Avila's documented
refusal to provide a breath sample; no further interrogation or sobriety tests
appear on the video. Considering the brevity of the police station video and its
remoteness in time from Avila's arrest, the jury could have concluded that
Avila's calm demeanor on the tape was not strong enough to overcome the
officers' direct testimony that Avila was intoxicated during the relevant time
period at the scene.
The record as a whole illustrates that
ample proof of Avila's intoxication was offered to the jury in this case. The
jury heard direct testimony that Avila was found unconscious behind the wheel of
her vehicle, smelled of alcohol, and acted in a belligerent and profane manner
toward law enforcement officials. In addition, Avila was unable to perform
multiple divided attention tasks and exhibited numerous involuntary clues of
intoxication. Avila's own testimony confirmed that she had consumed multiple
alcoholic beverages prior to her arrest and, in spite of her belief that no
alcohol remained in her system, she refused to provide a breath specimen.
Finally, the State offered evidence directly rebutting Avila's version of the
facts: that she was conscious, sober, reading her mail, and waylaid by a
malfunctioning traffic light on her way home.
Viewing all the evidence in the light most
favorable to the verdict, a rational jury could have concluded beyond a
reasonable doubt that Avila was intoxicated in that she had lost the normal use
of her mental and/or physical faculties at the time Officer Lynn encountered and
arrested her. See, e.g., Fogle v. State, 988 S.W.2d 891, 893
(Tex. App.--Fort Worth 1999, pet. ref'd) (holding evidence legally sufficient to
support finding of intoxication by reason of introduction of alcohol and loss of
normal use of mental and physical faculties); Reagan v. State, 968
S.W.2d 571, 572-73 (Tex. App.--Texarkana 1998, pet. ref'd) (holding evidence of
alcohol odor on defendant's breath and defendant's poor performance of field
sobriety tests legally sufficient to support DWI conviction due to defendant's
loss of normal use of mental and physical faculties); Little v. State,
853 S.W.2d 179, 183 (Tex. App.--Corpus Christi 1993, no pet.) (holding
uncorroborated testimony of arresting officer legally sufficient evidence to
support DWI conviction). Likewise, viewing the evidence in a neutral light and
giving due deference to the jury's responsibility to resolve conflicts in the
evidence, we cannot say that the jury's verdict is against the great weight and
preponderance of the evidence. See, e.g., Fogle, 988 S.W.2d at
893-94 (holding evidence of defendant's loss of mental and physical faculties
factually sufficient to support DWI conviction); Reagan, 968 S.W.2d at
572-73 (same). We hold that the evidence of intoxication in this case was both
legally and factually sufficient to support the jury's verdict. We overrule
Avila's point.
V. Conclusion
Having overruled Avila's sole point, we
affirm the trial court's judgment.
 
                                                           
PER CURIAM
 
PANEL F: WALKER, DAUPHINOT, and HOLMAN, JJ.
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
[Delivered February 13, 2003]