Avila v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-01-239-CR

DONNA LIZETTE AVILA APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 10 OF TARRANT COUNTY

------------

OPINION

------------

I. Introduction

Appellant Donna Lizette Avila (“Avila”) was convicted of driving while intoxicated (“DWI”), sentenced to twenty days’ confinement in the Tarrant County Jail, and assessed a $700 fine.  On appeal, Avila challenges the legal and factual sufficiency of the evidence to support her conviction.  We will affirm.

II. Background Facts

At approximately 3:00 a.m. on December 11, 2000, North Richland Hills Police Officer Edward Roland Lynn (“Officer Lynn”) was “dispatched to a vehicle or a motorist assist at Harwood and Davis.”  Officer Lynn found a black Honda sport utility vehicle sitting at the intersection.  Officer Lynn pulled in behind the Honda and activated his emergency lights, and then exited his patrol unit to inspect the Honda.  The Honda’s engine was running, its headlights were on, and the driver’s side window was down. Officer Lynn saw a person, later identified as Avila, lying over in the driver’s seat of the Honda, apparently passed out, with one foot on the brake and the other foot resting on the accelerator.

In an effort to rouse Avila, Officer Lynn “made several, loud, verbal commands” but received no response.  He then reached inside, placed the vehicle in park, and removed the keys from the ignition.  Officer Lynn opened the door, confirmed that Avila had a pulse, and began to shake her.  Avila, groggy and disoriented, was verbally abusive to Officer Lynn.  She sat up and tried to shut the car door, striking weakly at Officer Lynn’s chest.  Avila refused to exit the Honda, closed the car door, and attempted to drive away.  She was unable to leave because Officer Lynn had removed the keys from the ignition.

Due to Avila’s threats of a lawsuit and the absence of a functioning video unit in his patrol vehicle, Officer Lynn called for an assist unit and a supervisor. He reopened the car door and instructed Avila to exit the vehicle.  When Avila again refused to get out and began striking at him, Officer Lynn placed Avila’s left wrist in a wrist-lock, removed her from the Honda, and handcuffed her.  Officer Lynn testified that Avila’s “movements were fairly slow and sluggish.”  Avila told Officer Lynn that she was a cop, but refused to produce any form of identification.  She later informed Officer Lynn that she was a parole officer and a major in the Army, and repeatedly accused him of “ruining her life.”  Officer Lynn suspected that Avila was intoxicated.

Soon after Officer Lynn removed Avila from the Honda and handcuffed her, Officer Dusty Scott and Sergeant Neil Maranto arrived on the scene. Officer Scott positioned his patrol vehicle so that the mobile video device would record the events at the scene.  Officer Lynn then attempted to administer a three-part sobriety test to Avila.  Officer Lynn began conducting a horizontal gaze nystagmus (“HGN”) test; however, because Avila was too close to the flashing emergency lights of the patrol vehicles, the results were not reliable.  In the interest of safety, the officers and Avila then relocated to a nearby parking lot to continue the sobriety evaluation. 

At the parking lot, Officer Lynn instructed Avila to perform a one-leg stand test and a nine-step walk and turn test, the second and third tests in the sobriety evaluation.  During the one-leg stand test, Avila “swayed while balancing, put [her] foot down at the count of eight, [and] started over.”  In addition, Avila “had to use her arms to balance.”  Avila exhibited three out of six possible clues while performing the one-leg stand test.  Officer Lynn testified that the observation of two clues during the test indicates possible intoxication.

Officer Lynn then instructed Avila to perform the nine-step walk and turn test, which requires the suspect to hold her arms at her sides and take nine steps heel-to-toe while counting aloud, and to then pivot on the ninth step and return in the same fashion.  Officer Lynn testified that Avila “started before the instructions were finished. [She] [s]topped while walking to steady herself, didn’t touch heal-to-toe [sic] on any of the steps, use[d] arms for balance[,] . . . los[t] balance while turning and turned incorrectly.”  Avila exhibited five out of ten possible clues during the walk and turn test.  Exhibition of two clues during the walk and turn test indicates possible intoxication.

Sergeant Maranto then conducted a second HGN test in the parking lot, with Avila positioned at a distance and facing away from the flashing emergency lights.  He noted a lack of smooth pursuit in both her right and left eye, distinct nystagmus at maximum deviation in each eye, and the onset of nystagmus in both eyes prior to forty-five degrees.  Avila exhibited six out of six possible clues during the HGN test.  Maranto concluded that Avila was intoxicated based on her poor performance of the field sobriety tests.  Maranto testified that, in his opinion, Avila had lost the normal use of her mental and physical faculties. 

Officer Lynn testified that he noticed the smell of alcohol on Avila and had no doubt she was intoxicated after observing her perform the field sobriety tests.  Officer Lynn concluded that Avila had lost the normal use of her physical and mental faculties and placed her under arrest for DWI.  The arrest took place at 3:26 a.m.

Officer Scott corroborated Officer Lynn’s testimony, stating that he had also detected the scent of alcoholic beverages on Avila and had noticed that Avila’s speech was slurred.  Officer Scott’s mobile video unit recorded the field sobriety tests and Avila’s subsequent arrest.  The tape was published to the jury during trial.  However, due to an unexplained mechanical problem, the majority of the sound was absent from the video recording.

When Avila arrived at the police station, the intoxilyzer room was occupied.  Consequently, the video recording of Avila’s interview was delayed until approximately 4:40 a.m.  Avila refused to provide a breath sample after she received the statutory warnings regarding the potential consequences of consenting to or refusing to provide a breath specimen.  The video tape of her refusal was published to the jury at trial.

Avila testified.  She explained  that, the day before her arrest, she drove to Killeen to visit an old roommate.  She stayed the night in Killeen and left sometime between noon and 2:00 p.m. the next day to drive back to Fort Worth.  That evening, Avila participated in a dart tournament at a local bar and consumed four alcoholic beverages between 7:00 p.m. and midnight.  Then, Avila said she sat at the bar, drinking water and talking with an acquaintance until the club closed for the night.  Avila visited in the parking lot for another half an hour before she left the premises at approximately 2:30 a.m.  She testified that, by the time she left the club, she did not think there was any alcohol in her system. 

After leaving the club, Avila recalled that she stopped at a gas station and then drove to the post office to pick up her mail.  She testified that she was on her way home when she came to the intersection of Harwood and Davis and discovered that the traffic light was malfunctioning.  She said the traffic signal would “flash twice, then stay red and flash again and then stay red.”  Because she had “seen 15 to 20 people pulled over at that particular intersection[,]” Avila decided to wait for the light to either cycle to green or turn to a steady flashing red light.  In the meantime, Avila testified she “was bent over in the passenger seat going through [her] mail and reading from the [overhead] light.”  Avila explained that Officer Lynn banged on the car window and startled her while she was reading her mail and waiting for the light to change. 

In rebuttal, Officer Lynn testified that Avila would have had to turn right at the intersection to proceed home, yet her vehicle was not in the right hand lane.  He said there was no possibility that Avila was awake and going through her mail when he approached her vehicle.  Finally, he said the light at the intersection in question was not malfunctioning and had never done so.

III. Standard of Review

Avila complains that the evidence is both legally and factually insufficient to support her conviction for DWI.
  In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict.  
Cardenas v. State
,
 
30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000); 
Narvaiz v. State
, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992), 
cert. denied
, 507 U.S. 975 (1993).  The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
McDuff v. State
, 939 S.W.2d 607, 614 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 844 (1997).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. 
 Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence.  
Johnson
, 23 S.W.3d at 11.  Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the 
verdict
, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  
Id
.  In performing this review, we are to give due deference to the fact finder’s determinations.  
Id
. at 8-9; 
Clewis
, 922 S.W.2d at 136.  Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice.  
Johnson
, 23 S.W.3d at 9, 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

IV. Application of Law to Facts

Avila claims that the evidence is insufficient to establish that she had lost the normal use of her mental or physical faculties by reason of the introduction of alcohol into her body.  She argues that the video recordings from the scene and the police station conclusively prove she was not intoxicated.  Specifically, Avila argues that the video of her arrest does not support the allegation that her speech was slurred, which in turn contradicts the theory that she was intoxicated.  However, as Avila points out, the video from Officer Scott’s patrol unit lacked fully functioning audio.  As a result, the tape neither supports nor contradicts testimony that Avila was slurring her words.  After weighing the evidence, the jury could have reasonably concluded that the patrol unit video did not convincingly rebut other evidence that Avila was intoxicated, i.e., had lost the normal use of her mental and/or physical faculties.

Avila further contends that the police station video tape, in which she refuses to provide a breath specimen, is “critical” because it does not indicate that she was intoxicated.  However, the police station video was recorded approximately ninety minutes after Officer Lynn first encountered Avila and administered field sobriety tests to her.  The police station video is brief, consisting only of Avila’s documented refusal to provide a breath sample; no further interrogation or sobriety tests appear on the video.  Considering the brevity of the police station video and its remoteness in time from Avila’s arrest, the jury could have concluded that Avila’s calm demeanor on the tape was not strong enough to overcome the officers’ direct testimony that Avila was intoxicated during the relevant time period at the scene.

The record as a whole illustrates that ample proof of Avila’s intoxication was offered to the jury in this case.  The jury heard direct testimony that Avila was found unconscious behind the wheel of her vehicle, smelled of alcohol, and acted in a belligerent and profane manner toward law enforcement officials.  In addition, Avila was unable to perform multiple divided attention tasks and exhibited numerous involuntary clues of intoxication.  Avila’s own testimony confirmed that she had consumed multiple alcoholic beverages prior to her arrest and, in spite of her belief that no alcohol remained in her system, she refused to provide a breath specimen.  Finally, the State offered evidence directly rebutting Avila’s version of the facts: that she was conscious, sober, reading her mail, and waylaid by a malfunctioning traffic light on her way home.

Viewing all the evidence in the light most favorable to the verdict, a rational jury could have concluded beyond a reasonable doubt that Avila was intoxicated in that she had lost the normal use of her mental and/or physical faculties at the time Officer Lynn encountered and arrested her.  
See
,
 e
.
g
., 
Fogle v. State
, 988 S.W.2d 891, 893 (Tex. App.—Fort Worth 1999, pet. ref’d) (holding evidence legally sufficient to support finding of intoxication by reason of introduction of alcohol and loss of normal use of mental and physical faculties); 
Reagan v. State
, 968 S.W.2d 571, 572-73 (Tex. App.—Texarkana 1998, pet. ref’d) (holding evidence of alcohol odor on defendant’s breath and defendant’s poor performance of field sobriety tests legally sufficient to support DWI conviction due to defendant’s loss of normal use of mental and physical faculties); 
Little v. State
, 853 S.W.2d 179, 183 (Tex. App.—Corpus Christi 1993, no pet.) (holding uncorroborated testimony of arresting officer legally sufficient evidence to support DWI conviction).  Likewise, viewing the evidence in a neutral light and giving due deference to the jury’s responsibility to resolve conflicts in the evidence, we cannot say that the jury’s verdict is against the great weight and preponderance of the evidence.  
See
,
 e
.
g
., 
Fogle
, 988 S.W.2d at 893-94 (holding evidence of defendant’s loss of mental and physical faculties factually sufficient to support DWI conviction);
 Reagan
, 968 S.W.2d at 572-73 (same).  We hold that the evidence of intoxication in this case was both legally and factually sufficient to support the jury’s verdict.  We overrule Avila’s point.

V. Conclusion

Having overruled Avila’s sole point, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: WALKER, DAUPHINOT, and HOLMAN, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

[Delivered February 13, 2003]