COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

RODNEY SMITH,                                              )
) No. 08-03-00461-CR
                                    Appellant,                        )
) Appeal from the
v.                                                                          )
) 292nd District Court
THE STATE OF TEXAS,                                   )
) of Dallas County, Texas
                                    Appellee.                          )
) (TC# F-0220145-JV)
)


O P I N I O N

            Rodney Smith appeals his conviction by a jury of the offense of aggravated sexual assault
of a child under fourteen years of age. The jury assessed his punishment at seventy-five years in
the Texas Department of Criminal Justice, Institutional Division. He asserts in three points that
the evidence is legally and factually insufficient to support his conviction and that the trial court
erred by overruling his Batson objection to the State’s misuse of its peremptory challenges. We
affirm.
            Smith asserts in his first two issues that the evidence is legally and factually insufficient
to support his conviction. In reviewing the legal sufficiency of the evidence to support a
conviction, we view all the evidence in the light most favorable to the verdict. Cardenas v. State,
30 S.W.3d 384, 389-90 (Tex.Crim.App. 2000); Narvaiz v. State, 840 S.W.2d 415, 423
(Tex.Crim.App. 1992). The critical inquiry is whether, after so viewing the evidence, any
rational trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. McDuff v. State, 939 S.W.2d 607, 614 (Tex.Crim.App.), cert. denied, 522 U.S. 844, 118
S.Ct. 125, 139 L.Ed.2d 75 (1997). This standard gives full play to the responsibility of the trier
of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct.
2781, 2789, 61 L.Ed.2d 560, 573 (1979).
            In reviewing a challenge to the factual sufficiency of the evidence, we begin with the
assumption that the evidence is legally sufficient. See Santellan v. State, 939 S.W.2d 155, 164
(Tex.Crim.App. 1997). We must view all the evidence without the prism of the “in the light
most favorable to the prosecution” construct. See Clewis v. State, 922 S.W.2d 126, 129
(Tex.Crim.App. 1996). We ask, “whether a neutral review of all the evidence, both for and
against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the jury’s determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof.” Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App.
2000); see also Goodman v. State, 66 S.W.3d 283, 285 (Tex.Crim.App. 2001).
            We must also remain cognizant of the fact finder’s role and unique position--one that the
reviewing court is unable to occupy. Johnson, 23 S.W.3d at 9. The jury determines the
credibility of the witnesses and may “believe all, some, or none of the testimony.” Chambers v.
State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). It is the jury that accepts or rejects
reasonably equal competing theories of a case. Goodman, 66 S.W.3d at 287. A decision is not
manifestly unjust as to the accused merely because the fact finder resolved conflicting views of
evidence in favor of the State. Cain v. State, 958 S.W.2d 404, 410 (Tex.Crim.App. 1997).
            The indictment alleged that on or about February 27, 2002, Smith intentionally and
knowingly caused the contact and penetration of the female sexual organ of the complainant by
his sexual organ and that the complainant, at the time of the offense, was not his spouse and was
younger than fourteen years of age. The complainant, who was not Smith’s spouse and who was
younger than fourteen years of age, clearly and unequivocally testified that Smith assaulted her
on numerous occasions.
            Dr. Donna Persaud, a physician and child abuse expert, testified that she examined the
complainant and that the results of the examination were consistent with past repeated vaginal
penetration and consistent with penetration by a penis in February 2002. She acknowledged,
however, that she could not tell what object was used for the penetration. She also related that
the complainant told her, “My daddy had sex with me. It hurt. Lots of times.” She said that in
her examination of the complainant, she found that the hymen, vagina, and fossa navicularis,
three structures representing the female organ proper, were all abnormal. She indicated that a
large portion of hymen tissue was almost completely absent, while tiny little remnants of tissue
remained in two places in the area where the tissue was otherwise absent. She related that the
internal vaginal vault was exposed and the vaginal opening was gaping wide. She related that,
whatever happened, it would have been painful. 
            Roshelle Nichols was the director and a teacher at the complainant’s day care facility. 
She testified that the complainant told her one day on the playground that her daddy had sex with
her. She also indicated the complainant said that her daddy put lotion on his private and then put
his private in her “pee-pee.” She stated that the child said, in relation to the incident, that “it
hurt.” 
            Wondra Chang, a psychotherapist at the Devereaux Residential Treatment Facility, a
residential facility where the complainant was placed, testified to sexual “acting out” that the
complainant did at the center. She said that in her opinion the complainant’s acting out was
consistent with a child who had been sexually abused. She indicated that the complainant had
also related to her that her stepfather had sexually abused her and the account of her abuse had
been consistent over time. 
            Julia Ann Farris, a caseworker with Child Protective Services, testified that the
complainant had been removed from her home due to sexual abuse. She said the complainant’s
placement had been changed numerous times, until she was finally placed in a residential
treatment center where she could receive constant supervision. 
            Katherine Diggins, the complainant’s mother, testified that she, Smith, and the
complainant all slept in the same room, but that the complainant slept in a separate bed. She said
that she never saw anything unusual about the complainant, including her private parts. She
specifically stated that she did not see any bleeding or unusual discharges, and that the
complainant never complained to her about any itching or feminine problems in the vaginal area. 
She related that the complainant had no soreness, unusual discharges, redness, or swelling. She
denied that the complainant had ever mentioned to her anything about any kind of sexual act
between her and Smith. Later, she testified that she could not remember that ever happening. 
She also denied confronting Smith about having sex with her daughter. She insisted that she did
not know how the complainant’s hymen was ruptured or why her vaginal area showed signs of
intercourse and was gaping open. She asserted that Smith would never lock a door and go into a
room with the complainant by himself. She related that she never saw Smith having sex with the
complainant, although she acknowledged that Smith and the complainant were alone together at
least once per month. She also admitted that she had told Child Protective Services that the
complainant was laughing and saying she was just playing and that she told the complainant that
“You shouldn’t play about things like that.” 
            Supora Alexander testified that she was a neighbor of the complainant, her mother, and
Smith. She said the complainant appeared very normal, and that she never complained of injury
or pain. Alexander acknowledged that she did not know or interact with the family, and that she
did not know what happened behind closed doors or what the family did on a daily basis. 
            Diane Witt testified that she was the complainant’s kindergarten teacher. She said the
complainant was a big discipline problem. She stated that the complainant never told her about
any sexual abuse. She indicated that she had received some training in looking for signs of child
abuse and sexual assault, but that she did not see those. She testified that the complainant was
not ever in pain where she needed to see a nurse or doctor, that she did not ever complain about
trouble urinating or going to the bathroom, and that she never talked about bleeding from her
vaginal area or bleeding on her clothes or underwear. She related that Child Protective Services
asked her about the complainant’s behavior in class. She said that she told them about how the
complainant liked little boys and men, that she would run up to adult men and straddle their legs. 
She indicated that she told them that she did not think that was normal behavior for a 
five-year-old child.
            Cynthia Wise testified that she was the assistant principal at the complainant’s school. 
She said that the complainant never said anything to her about being sexually assaulted, or being
sexually, physically, or emotionally abused. She stated that she never saw any signs of anything
of that nature. She said that Smith and the complainant’s mother were very supportive in trying
to deal with the complainant’s behavior problems at school. She testified that the complainant
never came to her when she was physically in pain, nor did she ever have problems urinating. 
She related that she had never heard anything about blood discharges or improper discharges
from the complainant’s vaginal area, nor did the complainant ever act out inappropriate sexual
acts with boys in her classroom or other male staff members at school. She acknowledged that
Diane Witt had mentioned that the complainant would straddle the legs of male staff members, or
rather, high school students who volunteered. She also stated that the complainant never talked
to her about anything that went on at home.
            Smith denied that he had sexually abused the complainant. He questions the sufficiency
of the evidence, alleging that: (1) the complainant’s testimony was “practiced and delivered as if
by rote;” (2) the caseworkers from child protective services only talked with the complainant; (3)
the complainant was sent to different placements and was directed to tell her story more than
once; (4) the complainant was reinforced with positive reinforcement after each telling of her
story; (5) the complainant’s memory as to other aspects of her life was unclear as she had given
conflicting accounts as to how many people lived in her house and could not recall the names of
her teachers at school; (6) there was no evidence that the complainant was sexually assaulted; (7)
there was no evidence concerning with what she was assaulted; (8) the experts who testified
could not testify as to a time frame in which any assault occurred; (9) the complainant at first
denied the assault but after being pressed and given positive feedback, she told her story again;
(10) the complainant told multiple stories as to when, where, and how the assault occurred; (11)
despite evidence that the sexual assault would have resulted in pain, the complainant never
complained of pain around adults at school and daycare, including any school nurse; (12) the
police detective conducted an inadequate investigation; (13) neither the complainant’s mother
nor the teachers who were with the complainant eight hours a day saw any signs of abuse, pain,
discharge, or urination problems; and (14) the only evidence the State provided was the opinion
of Child Protective Services that the complainant had been assaulted. 
            In substance, then, Smith urges that the evidence is insufficient to show that he
committed a sexual assault against the complainant as alleged in the indictment because: (1) the
complainant is not a credible witness; (2) there was not a sufficient investigation of the offense
either by Child Protective Services or by the DeSoto Police Department; (3) the evidence is
insufficient to show he conducted any assault with his penis; (4) the evidence is insufficient with
respect to the time of the offense.
            We have examined the testimony of the complainant as well as the testimony of the other
witnesses concerning the matters raised by Smith with respect to the credibility of the
complainant. We would note the following: (1) our record does not reflect that the
complainant’s testimony was “practiced and delivered as if by rote;” (2) except for initially
denying that there was an assault, as commonly occurs with younger children, the complainant
never wavered from her story that Smith sexually assaulted her by putting his private in her
private; and (3) the complainant mentioned to one or more adults that the sexual assault “hurt.”
            The testimony reflects that after Child Protective Services made a preliminary
determination that an assault had occurred, they removed the complainant from the home and
referred the matter to the DeSoto Police Department for an investigation. Although Smith says
Detective Gibson of the DeSoto Police Department made no investigation but essentially took
calls from Child Protective Services and filed a report, the detective testified that he also talked
to the complainant’s mother and to Smith himself. Smith states that the detective gave the case
to the district attorney because he did not believe he had probable cause to file the case, but we
have been unable to find any such testimony in the record, and Smith does not refer us to any
such testimony. 
            The record reflects that Child Protective Services received a report from the outcry
witness, who was the director and a teacher at the complainant’s daycare facility, and talked to
Smith, the complainant, the complainant’s mother, and the complainant’s kindergarten teacher.
            Although Smith complains that the State presented no evidence as to whether the
complainant had been assaulted or with what she had been assaulted, his argument totally ignores
the complainant’s testimony as to both. The complainant testified Smith put his private in her
private and told her daycare teacher that he did it after rubbing it with baby lotion. The testimony
of a sexual assault victim alone is sufficient evidence of penetration to support a conviction, even
if the victim is a child. Hellums v. State, 831 S.W.2d 545, 547 (Tex.App.--Austin 1992, no pet.). 
As we have noted, Smith questioned the sufficiency of the evidence with respect to when the
offense occurred. The indictment was presented on June 25, 2002. The trial was conducted in
August 2003. As previously noted, the indictment alleged that the offense occurred on or about
February 2002. The complainant was seven at the time of trial. She testified that when she was
five years old, Smith had sex with her by putting his private in her private. She said it happened
more than once. The “on or about” language of an indictment allows the State to prove a date
other than the one alleged in the indictment as long as the date is prior to the presentment of the
indictment and within the statutory limitations period. Sledge v. State, 953 S.W.2d 253, 256
(Tex.Crim.App. 1997). The statutory period of limitations in this case is ten years from the
complainant’s eighteenth birthday, which has not yet occurred. See Tex.Code Crim.Proc.Ann.
art. 12.01(5)(B)(Vernon Supp. 2004-05). The assaults in this case were not investigated nor sent
to the district attorney’s office for prosecution until after they occurred. Therefore, because the
date proved was before the presentation of the indictment and within the statute of limitations,
the date shown by the evidence was sufficient. We hold that the evidence is legally and factually
sufficient to support Smith’s conviction. We overrule Points of Error One and Two.
            Smith urges in Point of Error Three that the trial court erred by overruling his Batson
objection. After both the State and Smith had submitted their peremptory strikes, Smith objected
to three of the State’s strikes, alleging that the State struck the three veniremembers because they
were African-Americans. The State replied that one of the three indicated that he had a friend in
the penitentiary, one had a brother there, and the third had a son in prison. The State also pointed
out that it had struck a white female who had a brother-in-law who was in prison. The fact that a
member of the venire was struck because the veniremember has a relative in prison is a 
race-neutral explanation. Chambers v. State, 866 S.W.2d 9, 24 (Tex.Crim.App. 1993). We
would also hold that the fact that a veniremember has a friend in prison is also a race-neutral
explanation. We reject Smith’s suggestions that such an explanation is not race-neutral because
a larger proportion of African-Americans are in prison than are those of other racial groups. 
Smith contends that this is a case where there was a disparate treatment in the use of a valid
reason for peremptory strikes, but in fact the record shows that the State struck a white female
juror because she had a brother-in-law in prison. We overrule Point of Error Three.
            The judgment is affirmed. 

February 3, 2005                                            JOHN HILL, Chief Justice (Ret).

Before Panel No. 5
Barajas, C.J, McClure, J., and Hill, C.J. (Ret.)
Hill, C.J. (Ret.)(Sitting by Assignment)

(Do Not Publish)