**Ruben Ramirez CARDENAS,
Appellant,**

v.

**The STATE of Texas.**

No. 73107.

Court of Criminal Appeals of Texas,
En Banc.

April 26, 2000.

Rehearing Denied June 7, 2000.

386

Alfredo Morales, Jr., McAllen, Rogelio Garza, Edinburg, for appellant.

Theodore C. Hake, Asst. Dist. Atty., Edinburg, for appellee.

**OPINION**

MEYERS, J., delivered the opinion of the court, in which McCORMICK, P.J., MANSFIELD, PRICE, HOLLAND, JOHNSON and KEASLER, J.J., joined.

Appellant was convicted of capital murder on February 18, 1998. TEX. PENAL CODE ANN. § 19.03(a)(2). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure article 37.071 §§ 2(b) and 2(e), the trial judge sentenced appellant to death. Art. 37.071 § 2(g).[1] Direct appeal to this Court is automatic. Art. 37.071 § 2(h). Appellant raises five points of error. We will affirm.

■ In his fifth point of error, appellant alleges that his "conviction should be vacated and a judgment of acquittal be entered because there was [legally] insufficient evidence to establish all of the necessary elements for both the underlying offenses (kidnapping and aggravated sexual assault) and capital murder."[2]

The evidence at trial showed that appellant and the victim were first cousins. During February of 1997, the victim's parents assisted with repairs to appellant's parents' trailer. After school, the victim would stay at the trailer while her parents worked. Appellant asked the victim's mother if he could take the victim out so

1. Unless otherwise indicated, all future references to Articles refer to Code of Criminal Procedure.

2. In neither his fourth nor fifth points of error does appellant expressly allege the evidence is "legally" insufficient. However, because these points allege that a judgment of acquittal should be entered due to allegedly insufficient evidence, we view them as raising legal insufficiency. In a single sentence at the conclusion of his fifth point of error, appellant requests that we conduct a factual sufficiency review. Appellant otherwise makes no reference to factual insufficiency or the applicable standard thereunder. Appellant has inadequately briefed a claim as to factual insufficiency.

that she would not be bored, and she assented. On February 13, 1997, appellant drove the victim and her boyfriend to the mall to play video games. On February 19, appellant took the victim with him to pick up his sister at a pizza place. After appellant took the victim home that evening, he used the bathroom in her family's apartment. The victim's door was open and her bedroom could be seen from the hallway leading to the bathroom.

The following night, February 20, appellant took the victim to a carnival. At 10:30 p.m., appellant stopped by Adolfo Vallejo's house. Vallejo testified that appellant was stumbling and told him that he had an eighteen-year-old girl in his car to whom his cousin had introduced him. Appellant said that he was planning to put cocaine in her beer "to get her messed up so that he could get into her pants." As appellant left, Vallejo looked in the car and saw the girl. A couple of days later, Vallejo recognized the victim's picture in the paper as the girl he had seen with appellant.

At 2:30 a.m., on Saturday, February 22, appellant crawled through Maria Juarez's window and came to the edge of her bed. He said that he was looking for her sister. She told appellant that her sister was not there, and appellant left. Juarez testified that she had known appellant for about six months. He had been in her house only once before and did not have permission to come through her window in the middle of the night. Anselma Rangel also testified that she had known appellant for about six months and that he had come by her house at around 2:30 or 3:00 a.m., on February 22. He told her that he had a friend with him and they wanted to party. Appellant left when Rangel told him that he could not come in. Rangel noticed that appellant was driving a gray car.

The victim shared a bed with her nine-year-old sister. Around 6:00 a.m., on February 22, the victim's sister was awakened by an intruder in their room. The intruder was leaning over her in the bed. She then noticed her sister's mouth was cov-

ered in tape and her hands were tied behind her back. The intruder picked up the victim, told her to stand up and keep quiet, and then went out the window with her. The victim's sister ran to alert her parents, and they called the police.

Jessica Rodriguez, who was staying in the same apartment complex as the victim's family, testified that at about 6:00 a.m. on February 22, she observed a man walking down the sidewalk with a bare-footed girl who was wearing only a shirt and underwear. The girl's hands were tied behind her. The man was wearing dark pants, a white shirt, and dark jacket. Rodriguez called the police. Appellant was identified by Rodriguez in court as resembling the man she saw that morning.

Another neighbor, Americo Aleman, testified that at about 6:00 on the morning of the offense, he observed a man sitting in the passenger seat of a car that Aleman later identified as resembling appellant's mother's car. The man told Aleman that he was waiting for a friend.

During their investigation of the victim's whereabouts, police spoke with appellant, who voluntarily came to the police station. He explained that on the night the victim disappeared he had been out with his friends in his mother's gray Ford Probe, but denied any involvement in her disappearance. One of the investigators noticed scratch marks on appellant's hands and arms, which appellant said were caused by his friend's dog. Appellant also had fresh scratches on his side near his armpit and over his belly button.

Appellant was arrested and arraigned when Tony Castillo, appellant's friend and co-defendant, admitted that he and appellant had kidnaped the victim. On February 23, 1997, appellant gave the following statement:

On Saturday, February 22, 1997, at about 1:30 a.m., I went to the Cubby Lounge in Edinburg with some friends, Mando and another friend who works at Pop-a-Top.

Once there, I met with another friend, Tony Castillo. A short while later, we all went for a cruise in my mother's car. The Edinburg ·police stopped us at the Circle K and they told us we needed [to] go home since we were drunk. The police officer then told me I was too drunk to drive and told my friend that works at Pop–a–Top to drive. He then drove to Pop–a–Top and the driver got off. I then started driving and went and dropped Mando off.

We then went by my house and picked up a bottle of Presidente. We then kept driving around. We were on Trenton Road when Tony asked me where we were going. I told him to wait and see. I was driving to [the victim's] apartment. When I was almost there I told him if he would help me kidnap somebody [sic]. He told me he would help me. I then parked in a parking lot at the Retama Village away from [the victim's] apartment. I then walked to [the victim's] apartment. I had some black electrical tape in my pocket. I also had a rag, and a pair of dark blue gloves on. I then picked [sic] my t-shirt and pulled it over my mouth and nose. I went through the back of [the victim's] apartment and I saw that the window was open a couple of inches. I then took the screen off and pulled open the window. I then went to [the victim's] bedroom. I opened the door and went in, and then closed the door. I then saw that she was awake looking at me. I told her to be quiet and I put the tape around her mouth. I then told her to get up. I then told her to turn around. After she stood up I tied her hands behind her back with the cloth I had. I got a sweater from her room and put it on her. I then grabbed a pair of jeans for her. I then opened the bedroom window and told her to step out. She stepped out and I followed her. I then walked her to the car. When I got to the car Tony was in the passenger side so I told him to drive. I then told [the victim] to turn around and I blindfolded

her. I then put her in the back seat through the passenger side. I then got in the back with her. Tony then drove off and went behind the school. He then drove to Pecan. When he got to Pecan, I could see two police cars getting to the Retama Village. Tony then drove to McColl. On McColl he turned left and went towards Edinburg. By this time I had already taken the tape off her mouth and then thrown it out. Tony then drove north of Edinburg on McColl. He pulled into a dirt road off McColl. We stayed there for awhile and Tony said he didn't want any part of what I was doing. He then got off and went walking. After Tony left I untied [the victim's] hands, but I left the blindfold on. I asked her if she was afraid and she said yes. I had sex with [the victim] while we were parked there. She didn't struggle when I was having sex with her. We were there for about an hour. I then tied her back up, and I went driving around the northwest area of Edinburg. She asked me if I could let her go. I was driving on a dirt road and I stopped by a small lake. I got her off and told her I was going to let her go. I untied her hands and she then came at me and scratched me all over my hands. I then put her on the ground and told her to stop. She then hit me with her knee on my leg. I then lost it and started punching her on the face. I then punched her on the neck with my right fist. She then started coughing up blood and was having a hard time breathing. She then stopped breathing. I got scared and put my ear on her chest. I couldn't hear a heart beat or any breathing. I tried giving her C.P.R. but she did not breath. I tried a couple of times but it didn't work. I checked her pulse on the neck but there was none. I then tied her back up and rolled her down a canal bank. The canal is close to the lake.

I didn't plan on doing this but I was high on cocaine. I then went to Tony's

house and he did not answer. I then went home.

Appellant supplemented his statement several days later to reflect that he had expressed to Castillo in advance that he wanted to kidnap someone and that Castillo said he was willing to help but wanted "to see somebody die." Appellant added that Castillo did not walk away but was hanging around the car during the rape and murder. He further revised his statement to say that he killed [the victim] at the site where he raped her, then tied her up and drove her body to the canal.

Appellant led police to the scenes where he raped the victim, where he threw out the electrical tape, and where he disposed of the body. The victim's body was mostly submerged in water and only the tops of her legs were visible. Her jeans were found a few feet away from her. She was wearing a bra and underpants, her hands were tied behind her back, and a pink towel was wrapped around her neck.

A chemist with the Department of Public Safety testified that hairs stuck to the electrical tape "exhibit[ed] the same microscopic characteristics as the victim's head hair." The State's DNA expert testified that the victim could not be excluded as the source of blood detected on the back floor and seat of appellant's mother's car. One in eighteen Hispanics shares this DNA type.

The medical examiner testified that the victim suffered a broken nose and severe blunt force trauma to the head and neck resulting from multiple blows. In his opinion, the victim was asphyxiated by the combination of a ligature consistent with the pink towel and major damage to the airway resulting from numerous blows to the neck.

In evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Appellant's specific claim is that the evidence is insufficient to prove the alleged underlying offenses. Appellant's claim is predicated on the assumption that the jury was required to find that he committed both underlying felonies, kidnaping *and* sexual assault. But the jurors were charged in the disjunctive; therefore, proof of only one of the underlying felonies is necessary to support appellant's conviction. *See Brooks v. State*, 990 S.W.2d 278, 283 (Tex.Crim.App.)(when jury returns general guilty verdict on indictment charging alternative theories of committing same offense, verdict stands if evidence supports any of theories charged), *cert. denied* 528 U.S. 956, 120 S.Ct. 384, 145 L.Ed.2d 300 (1999). Thus, the evidence need only be sufficient to prove appellant murdered the victim in the course of committing or attempting to commit one of the disjunctively-alleged underlying offenses—either kidnaping or sexual assault.

Appellant claims the evidence is insufficient because of a number of alleged weaknesses in the evidence.[3] But a legal sufficiency of the evidence review does not involve any weighing of favorable and non-favorable evidence. Rather, all of the evidence is viewed in a *light favorable to the verdict*, to determine whether any rational

3. Appellant alleges the evidence is insufficient because (1) appellant's fingerprints were not found in the victim's home or in appellant's mother's car; (2) none of the hair, tissue, or fiber samples taken from the electrical tape covering the victim's mouth matched appellant's; (3) a neighbor, Jessica Rodriguez, identified the man escorting the girl through the apartment complex as wearing a white shirt with a collar, although appellant indicated in his statements that he was wearing a t-shirt; (4) neither Rodriguez nor witness Americo Aleman identified appellant from a photo lineup; (5) the victim's sister described the intruder as having salt-and-pepper hair, although appellant has dark hair; and (6) no semen was found in the victim and her body showed no signs of sexual trauma.

jury could find the essential elements of the offense beyond a reasonable doubt.

According to appellant's confession, appellant entered the victim's house through a window, bound the victim with tape, abducted and raped her, and then disposed of her body in a remote canal. Appellant then took police to the sites where he threw the tape out of the car window, where the rape and murder took place, and where he disposed of the body. Blood consistent with the victim's was found in the car appellant was driving, and hair consistent with the victim's was stuck to the tape which was found at the location where appellant said it was thrown from the car. The victim's mother testified that the victim's sister described the victim as having tape over her mouth and her hands tied behind her when the intruder took the victim out the window. A neighbor of the victim's witnessed a man leaving the apartment complex with a woman who was dressed in only her underwear and a shirt, and who had her hands tied behind her. The witness stated that the girl appeared to be going with the man against her will. The State also presented evidence that, earlier in the evening, appellant crawled through the window of another woman's house and entered her bedroom looking for her sister. Based on this evidence, any rational jury could find beyond a reasonable doubt that appellant committed murder in the course of kidnaping or attempting to kidnap the victim. Because the evidence was sufficient to establish that appellant killed the victim in the course of a kidnaping, we need not address the sufficiency of the evidence of sexual assault. Appellant's fifth point of error is overruled.

In his fourth point of error, appellant contends he is entitled to an acquittal because his extrajudicial confessions were not sufficiently corroborated. Independent evidence that a crime has been committed must corroborate a defendant's extrajudicial confession to capital murder as to both the murder and underlying felo-

ny. *See, e.g., Chambers v. State,* 866 S.W.2d 9, 15 (Tex.Crim.App.1993), *cert. denied,* 511 U.S. 1100, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994). The corroborating evidence need not conclusively prove the underlying offense; rather, "[a]ll that is required is that there be some evidence which renders the commission of the offense more probable than it would be without the evidence." *Id.* at 15–16.

Appellant cites *Fisher v. State,* 851 S.W.2d 298, 304 (Tex.Crim.App.1993) and *Gribble v. State,* 808 S.W.2d 65, 72 (Tex. Crim.App.1990), *cert. denied,* 501 U.S. 1232, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991). In *Fisher,* we upheld a conviction where the victim's body was never found. We held that evidence such as Fisher's steam cleaning his carpet soon after the victim's disappearance, the discovery of ashes and burned bones near a friend's house that he had recently visited, and recent traces of blood in the garbage disposal and drain pipe of Fisher's house were sufficient to corroborate his extrajudicial confession to murdering and mutilating his girlfriend. In *Gribble,* the defendant confessed to killing the victim and showed the police where he concealed the body. We determined that discovery of the victim in an uninhabited area wearing only a robe, of her purse in a lake, and of no signs of struggle at her home corroborated Gribble's admission to the kidnaping element of the charged capital murder offense.

Similarly, in the instant case, appellant confessed to murdering the victim and then led police to her body, which was where appellant said it would be. Forensic investigators found hair consistent with the victim's on the tape and blood consistent with the victim's in the car appellant was driving. The victim's mother testified that, according to the victim's sister, an intruder had entered the girls' bedroom, had bound the victim, pushed through the bedroom window, and escorted away in her underwear. An eyewitness observed a man escorting a bound girl wearing only

her underwear and a shirt from the victim's apartment complex about 6:00 on the morning of the offense. Another witness observed, around the same time of the morning, a man fitting the description of appellant's co-defendant in the passenger seat of a car matching the description of the car appellant admitted to driving on that morning. Such evidence renders the commission of a kidnaping and a murder more probable. Appellant's complaint seems to focus on the dearth of evidence indicating that a sexual assault occurred. As noted previously, however, the jury could convict appellant of capital murder if it found the murder was committed during the course of kidnaping *or* sexual assault. Because the evidence of a kidnaping was sufficiently corroborated, we need not consider the evidence corroborating appellant's confession to the sexual assault. Appellant's fourth point of error is overruled.

 In his first point of error, appellant makes five allegations of ineffective assistance of counsel. To prevail on an ineffective assistance claim, appellant bears the burden of proving (1) that counsel's performance was deficient and (2) that the deficiency prejudiced his trial. To prove deficiency, appellant must demonstrate that counsel's performance deviated from "prevailing professional norms." *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *McFarland v. State,* 845 S.W.2d 824, 842–43 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). To prove prejudice, appellant must demonstrate a reasonable probability that the result of his trial would have been different had counsel not performed deficiently. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Strickland,* 466 U.S. at 693; *McFarland v. State,* 845 S.W.2d at 842–43.

 Appellant first complains that counsel failed to assert, as a basis for suppressing his confession, that the police neglected to inform appellant, a Mexican citizen,[4] of his right under Article 36(1)(b) of the Vienna Convention on Consular Relations ("Vienna Convention") to contact the Mexican Consulate for assistance. He argues that under a Ninth Circuit opinion, his trial counsel could have reasonably argued that appellant's rights were violated thereunder.

Even assuming, *arguendo,* that appellant's rights under the Vienna Convention were violated, he does not allege or develop any argument as to how the outcome of his trial would have been different had his lawyer objected on the basis of a Vienna Convention violation. Appellant complains only that the Vienna Convention issue will remain "unresolved" on direct appeal because his counsel failed to preserve it. He makes no attempt to establish that he would have been entitled to a reversal on appeal, or what the remedy for a violation of the Vienna Convention would have been. Appellant has not shown how counsel's failure to preserve this issue for review undermines confidence in the outcome of his trial. *See Strickland,* 466 U.S. at 693, 104 S.Ct. 2052.

 Appellant also claims his counsel was ineffective by allowing foreperson Lisa Ayala Hettler to sit on the jury because she knew Sandra Quintanilla, a reporter who interviewed appellant in jail. According to appellant, Quintanilla had a "professional relationship" with Hidalgo County District Attorney Rene Guerra.

Appellant fails to rebut the presumption that counsel's decision to reserve a peremptory strike was formulated on "sound trial strategy." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *see Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994); *Hardin v. State,* 951 S.W.2d 208, 211 (Tex. App.—Houston [14 Dist.] 1997, no pet.)

---

4. Appellant's mother testified in a bond-reduction hearing, conducted five months be- fore the suppression hearing, that appellant is a citizen of Mexico.

("Peremptory strikes are limited in number, and the determination of which veniremembers warrant the exercise of this restricted resource is inherently strategic in nature"). Appellant points to nothing in the record suggesting that Hettler would not be an impartial juror. During her voir dire examination, Hettler stated that she could evaluate the evidence fairly and consider the full range of punishment, including probation. She further stated that if Quintanilla were called as a witness, she could impartially evaluate her testimony.[5] Appellant has not established deficient performance. *See Butler v. State,* 872 S.W.2d 227, 242–43 (Tex.Crim. App.1994) (appellant failed to prove deficient performance for failure to exercise peremptory challenge where venireperson expressed no predisposition toward the death penalty and indicated that she would be fair and open minded even though victim was a family friend), *cert. denied,* 513 U.S. 1157, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995). Moreover, appellant does not allege how Hettler's relationship with Quintanilla affected her service as a juror or the outcome of appellant's trial.

▮ Appellant also complains that counsel was ineffective in failing to call Quintanilla as a witness. He contends Quintanilla could have testified about how she arranged the videotaped interview of appellant that was introduced at trial. He claims counsel should have "explored and exposed [Quintanilla's] familial relationship with [the] District Attorney ..., together with all of her professional contacts with key officials at the County Jail and Hidalgo County Sheriff's Department, both of whom gave Ms. Quintanilla unprecedented access to an inmate and the exclusive use of the office of a high ranking sheriff's officer to conduct the interview." Appellant does not explain his theory that the interview was somehow improperly arranged, or what Quintanilla's testimony would have revealed. Neither does appellant allege a reasonable probability that

the outcome of his trial would have been different had Quintanilla testified.

▮ Appellant also alleges counsel should have requested an instruction for a lesser-included offense, including manslaughter, criminally negligent homicide or aggravated assault, on the ground that the evidence demonstrated that he did not possess the requisite mental state to commit murder. In support of this claim, appellant points to his statements to police and during the television interview that he "lost it" when the victim began to scratch his hands and that he did not realize how hard he hit her.

▮ In order to establish counsel's performance was deficient for such failure, appellant must show that he was entitled to an instruction on one of the lesser-included offenses. *See Fuentes v. State,* 991 S.W.2d 267, 272–73 (Tex.Crim.App.) (counsel not ineffective for failing to request lesser-included offense of felony murder instruction where "there is no evidence upon which a jury could rationally have found that appellant did not intend to kill when he shot the deceased"), *cert. denied* 528 U.S. 1026, 120 S.Ct. 541, 145 L.Ed.2d 420 (1999). To establish that he was entitled to a lesser-included-offense instruction, appellant must establish that (1) manslaughter, criminally negligent homicide, or aggravated assault is a lesser-included offense of capital murder and (2) there was evidence that, if guilty of an offense, appellant was guilty only of the lesser-included offense. *See id.* (citing *Rousseau v. State,* 855 S.W.2d 666, 672 (Tex.Crim.App.), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993)). We have recognized that manslaughter, criminally negligent homicide and aggravated assault are lesser-included offenses of murder and, therefore, of capital murder. *See, e.g., Jackson v. State,* 992 S.W.2d 469, 475 (Tex.Crim.App.1999) (manslaughter); *Saunders v. State,* 840 S.W.2d 390, 391 (Tex.Crim.App.1992)

---

**5.** Quintanilla was never called as a witness.

(criminally negligent homicide). The first prong of *Rousseau* is thus satisfied.

The further question is whether appellant's statement that he did not intend to hit the victim so hard is evidence that he is guilty only of the lesser included offenses, and not of capital murder. Appellant's statement does not amount to evidence that he is guilty only of one of the lesser offenses, in light of the other evidence of appellant's intent to kill the victim. The forensic pathologist testified that, although the victim was struck at least four to five times in the face and neck, the cause of death was asphyxiation by a ligature consistent with a towel found around her neck and blows to the neck inflicted with twenty to thirty pounds of force—"deep enough to go through the throat, in the airways ... to the point that [the inside] was completely obstructed." Given the number of blows, severity of the injuries, and particularly the evidence that the victim was also strangled with the towel, appellant's statement that he "lost it" and did not realize how hard he hit the victim does not negate the physical evidence showing an intent to kill. *See Tompkins v. State*, 774 S.W.2d 195, 210–11 (Tex.Crim.App.1987), *affirmed*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989). Appellant's counsel was not deficient in failing to request an instruction on the lesser included offenses.

In his final allegation of ineffective assistance of counsel, appellant claims counsel should have called members of the jail staff who would have testified that appel-lant was well-behaved during his year-long incarceration in the county jail. Appellant provides no support for this allegation and fails to allege that the outcome of his trial would have been different had such witnesses testified. Appellant's first point of error is overruled.

■ In his second and third points of error, appellant claims the trial court erred in failing to include a jury instruction regarding the voluntariness of his statements to police.[6] None of the cases cited by appellant concern an alleged failure to include a voluntariness instruction.[7] Moreover, appellant does not address the question of whether the alleged error in failing to include such instruction was harmless. *See Payne v. State*, 11 S.W.3d 231, 231–32 (Tex.Crim.App. 2000)(mandate issued March 6, 2000)(error in failure to instruct jury on voluntariness of conduct subject to harm analysis).

Appellant has inadequately briefed these points by neglecting to present argument and authorities as required by Texas Rule of Appellate Procedure 38.1(h). *See Smith v. State*, 907 S.W.2d 522, 532 (Tex.Crim. App.1995) (overruling point of error because arguments and authorities presented were "different in character" from the error alleged under the point); *see also Ladd v. State*, 3 S.W.3d 547, 575 (Tex. Crim.App.1999) (holding that requiring capital appellants to abide by the briefing rules does not offend due process), *cert. filed* (Dec. 17, 1999). Appellant's second and third points of error are overruled.

---

6. Although appellant alleges these as two separate points of error, there is no substantive difference between them:

Point of error two: The trial court erred in failing to allow a jury charge on the voluntariness of the appellant's statements to the police.

Point of error three: The trial court erred in not allowing appellant to charge the jury on the voluntariness issue.

7. Appellant cites *Ashcraft v. Tennessee*, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (1944), *Wolfe v. State*, 917 S.W.2d 270 (Tex.Crim.App. 1996), *Moore v. State*, 882 S.W.2d 844 (Tex. Crim.App.1994) and *Harris v. State*, 465 S.W.2d 175 (Tex.Crim.App.1971). These cases do not concern a court's refusal to include a voluntariness instruction. *Ashcraft, supra* (concerning voluntariness of confession); *Wolfe, supra* at 281–82 (addressing whether court was required to hold hearing on voluntariness); *Moore, supra* at 846 (discussing admissibility of recorded confessions) and *Harris, supra* at 176–77 (addressing appellant's complaint that trial court erred in failing to conduct hearing to determine voluntariness). If these cases lend support for appellant's argument that he was entitled to an instruction, he does not explain how.

The judgment of the trial court is affirmed.

KELLER, J., concurs in point of error one and otherwise joins the opinion. WOMACK, J., delivered a concurring opinion.

WOMACK, J., concurring.

I join the judgment of the court. I do not agree that the appellant's fifth point of error was inadequately briefed, *see ante* at 2 n. 2. I would hold that the appellant's challenge to the sufficiency of the evidence, as a matter of fact, has no merit.