*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



## MEMORANDUM OPINION

No. 04-09-00385-CR

Daniel **BAUTISTA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, Karnes County, Texas
Trial Court No. 08-11-00129-CRK
Honorable Bert Richardson, Judge Presiding[1]

Opinion by:    Karen Angelini, Justice

Sitting:        Catherine Stone, Chief Justice
                 Karen Angelini, Justice
                 Rebecca Simmons, Justice

Delivered and Filed:  July 7, 2010

AFFIRMED

       Daniel Bautista appeals his conviction for possessing a cellular telephone while an inmate

in a correctional facility. The indictment included an enhancement paragraph for conviction of a

prior felony, which raised the level of offense from a third degree felony to a second degree

felony. After the jury found Bautista guilty, the trial court found the enhancement allegation to

be true and sentenced Bautista to serve ten years imprisonment. In one issue on appeal, Bautista

---

[1] Sitting by assignment.

argues he is entitled to a new punishment hearing because the evidence is legally insufficient to prove the enhancement paragraph alleged in the indictment. We disagree and affirm the trial court's judgment.

## DISCUSSION

In reviewing whether the evidence is legally sufficient to support a conviction, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Cardenas v. State*, 30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000), *cert. denied*, 130 S. Ct 2094 (2010).

To meet its burden of establishing a defendant has been convicted of a prior offense, "the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction." *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). There is no specific document or mode of proof required to prove these two elements. *Id.* Further, there is no "best evidence" rule requiring the prior conviction be proved with any document, much less any specific document. *Id.* Although a certified copy of a final judgment and sentence may be the preferred and convenient method of proof, the State may prove the two elements in a number of different ways. *Id.* "Any type of evidence, documentary or testimonial, might suffice." *Id.* at 922.

The Texas Court of Criminal Appeals has likened the proof necessary to establish that a defendant on trial is the same person named in an alleged prior criminal conviction to a jigsaw puzzle. *Id.* at 923. Although the puzzle pieces standing alone may have little meaning, when the pieces are fitted together, they usually form the picture of the person who committed the alleged

prior conviction. *Id.* The trier of fact must look at the totality of the evidence to determine whether there was a previous conviction and whether the defendant was the person convicted. *Id.*

Bautista argues that the evidence introduced during the punishment phase of the trial, commonly referred to as a "pen packet," was not sufficient to prove beyond a reasonable doubt that he had been previously convicted of the cause number alleged in the indictment. More specifically, Bautista contends "there was no evidence specifically tying the judgment in the pen pack to [Bautista]."

The enhancement paragraph of the indictment alleged that "prior to the commission of the aforesaid offense on the 19th day of October, 1995, in Cause #K95-504 in the 49th District Court of Webb County, Texas, the defendant was convicted of the felony offense of Murder." Thus, in order to prove the enhancement allegation, the State was required to link Bautista to the murder conviction out of Webb County as alleged in the indictment.

At the punishment phase of Bautista's trial, the State introduced the "pen packet," the first page of which was an affidavit of the Chairman of Classification and Records for the Texas Department of Criminal Justice - Correctional Institutions Division, certifying the attached documents as true and correct copies of the original records. The second page shows two photographs of a male individual, a front view and a side view, labeled "Texas Department of Criminal Justice – ID" and bearing the number 739045, the date of 02/06/96, and the name "Bautista, Daniel." The next four pages in the "pen packet" are the Judgment and Sentence in Cause No. K95-504, styled "The State of Texas vs. Daniel Bautista." The Judgment and Sentence recite, among other facts, the date of judgment – November 20, 1995; the offense convicted of – Murder; the sentence assessed – thirty years; and the date to commence confinement – October 19, 1995. The Judgment and Sentence is signed by "Manuel R. Flores,

Judge for the 49th Judicial District Court Webb County, Texas." Also contained within the "pen packet" is a fingerprint card bearing numerous fingerprints. The fingerprint card also contains the following information:

Date of arrest: 10-19-95
Name: Bautista, Daniel
Date of birth: 8-19-77
Place of birth: Harris
Sex: M
Race: H
Height: 5-8
Weight: 141
Eyes: Brn
Hair: Blk
Skintone: Light
County sentenced from: Webb Co.
Custody: TX013015C
TDCJ-ID#: 739045
Date received: 2-05-96
Charges: Murder
Disposition: 30 yrs.
Last residence: Laredo Tx.

Additionally, during the punishment phase of the trial, the State presented the testimony of Israel Brionez, Jr., an investigator and fingerprint expert, who testified that he took fingerprints of Bautista before testifying and those fingerprints matched the fingerprints on the fingerprint card in the "pen packet." When Bautista's attorney objected to the "pen packet," arguing that there was no link between the judgment and Bautista, the court stated the following:

> Well, I guess what I see here is the affidavit that typically comes with a pen-pack, the photograph, there's a copy of the judgment that comes out of the 49th Judicial District Court out of Webb County stating the nature of the offense. It's a judgment that's signed by the Judge on – in January of 1996. And there's a fingerprint card attached that has all the similar identifiers of the defendant, name, date received, conviction, Webb County, all of that.

Later, when Bautista's attorney argued that in order to prove the enhancement paragraph, Bautista's fingerprint must appear on the judgment itself, the trial court noted the following:

> . . . let me just note for the record that the indictment alleges that the defendant was convicted out of Webb County on the 19th day of October, 1995 in Cause Number K95-504 in the 49th District Court. There's a self-authenticating – There's an affidavit attached to the pen-pack [that] contains a photograph of the defendant. And I'll note for the record that it has the same TDC number on it that is noted on the indictment. The photograph appears to be that of the defendant who's seated in the courtroom today. There is a judgment signed by Manuel Flores, who is a Presiding Judge, and it's out of the 49th Judicial District Court, Webb County, where it states that the date the sentence was imposed was October 19th, 1995. Daniel Bautista is named as the defendant in that judgment, which is identical to what's alleged in the indictment, and there's a fingerprint card attached.

On appeal, Bautista argues that the evidence did not prove that he was the same person who was named in the Webb County Judgment and Sentence. In support of his argument, Bautista cites two cases: *Cruz v. State*, No. 08-06-00294-CR, 2009 WL 475784 (Tex. App.—El Paso 2009, no pet.), and *Zimmer v. State*, 989 S.W.2d 48 (Tex. App.—San Antonio 1998, pet. ref'd). However, both cases are distinguishable.

In *Cruz*, the El Paso Court of Appeals reversed and remanded for a new punishment hearing because the State failed to introduce the pen packet into evidence. *Cruz*, 2009 WL 475784, at *2. The court reasoned that "[t]o establish a prior conviction in the manner attempted by the State, certified copies of a judgment and a sentence *and* authenticated copies of the prison records including fingerprints, supported by expert testimony identifying them as identical with known prints of the defendant must be introduced." *Id.* (emphasis in original). In the case before us, the State did precisely what the El Paso court stated must be done.

In *Zimmer*, 989 S.W.2d at 50, the State introduced only a booking slip, but not the complete pen packet. This court held the booking slip insufficient to prove the enhancement

allegation, noting that there was no other evidence, such as a photograph, that could link the defendant to the prior conviction. *Id.* at 51. In the case before us, however, the State did introduce the complete authenticated pen packet, which included the photographs of Bautista.

In response to Bautista's argument, the State contends that, viewing the evidence in the light most favorable to the verdict, the trial court could find the evidence sufficient to support the enhancement allegation. We agree. The evidence consisted of the authenticated "pen packet," which contained the prior Judgment and Sentence, the photographs of Bautista, and the fingerprint card. The evidence also included expert opinion testimony that the fingerprints on the fingerprint card are the same as Bautista's fingerprints. Additionally, the fingerprint card reflects the date of arrest as 10-19-95, which is consistent with the date of confinement commencing on 10-19-95 as recited in the judgment. The fingerprint card, judgment, and indictment in the case before us list the same name as the defendant, Daniel Bautista. The fingerprint card reflects Bautista's date of birth as 8-19-77; gender as male; race as Hispanic; height as 5'8"; weight as 141 lbs; eyes as brown; hair as black; and skin tone as light. These are all identifiers that were readily visible to the trial court when he observed Bautista during the course of the trial. The TDCJ-ID# of 739045 appeared on the indictment in the case being tried as well as on the photograph of Bautista and fingerprint card contained in the "pen packet." Further, the fingerprint card indicates "date received" as 2-05-96, which is a little over two months after the November 20, 1995, date of the judgment. Lastly, the fingerprint card reflects the charge as murder and the disposition as thirty years, which corresponds with the charge and disposition in the judgment.

As noted, the trier of fact must look at the totality of the evidence to determine if there is sufficient evidence to link the defendant to the prior conviction. We find that, considering the

authenticated evidence contained in the "pen packet," together with the expert fingerprint testimony and the trial court's ability to view and identify the individual before him, the evidence is legally sufficient to link Bautista to the prior conviction.

Accordingly, we affirm the trial court's judgment.


Karen Angelini, Justice

DO NOT PUBLISH