

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0849-11

**DEL RAY SANDERS, Appellant**

**v.**

**THE STATE OF TEXAS**

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE NINTH COURT OF APPEALS
POLK COUNTY**

KELLER, P.J., filed a dissenting opinion in which WOMACK, and JOHNSON, JJ., joined.

Appellant was charged with murder. The trial court denied his request for jury instructions on the lesser-included offenses of manslaughter and criminally negligent homicide. On appeal, appellant contended that there was some evidence that his conduct was reckless or criminally negligent rather than intentional or knowing. The court of appeals rejected his contention on the basis that there was other evidence that he acted intentionally. I would take this opportunity to clarify our caselaw regarding when evidence raises a lesser-included offense, and I would hold that the lesser-included offenses were raised by the evidence in this case.

## I. BACKGROUND

### A. Evidence at Trial

#### 1. *Before the Incident*

The victim in this case was appellant's wife, Linnie. Both appellant and Linnie abused prescription drugs. Appellant also physically assaulted his wife, and at some point she had indicated that she was afraid of him. Linnie had a metal plate in her neck that made her more vulnerable to injury than the average person.

#### 2. *Appellant's Statements about the Incident*

On February 16, 2009, appellant staggered outside and said to a neighbor, "I think my wife is dead." When the neighbor noticed that the curtains in appellant's house had fallen down, appellant explained that Linnie "does a lot of drugs" and "staggers all over the place." Appellant also told the neighbor that he wanted to die and later said, "I guess I'll be going to jail."

In front of several law-enforcement officers, appellant stated that he did not want to live without Linnie. He said that he and his wife had argued over prescription medications, that she began falling down and passing out, and that he dragged her and tripped over her. He said that he thought he was supposed to let Linnie "sleep it off" and that he cleaned her up "to make her pretty."

While he was in jail awaiting trial, appellant talked to a cellmate named J.C. Fleming.[1] Appellant talked to him about being angry because "his wife had taken all the pills." Appellant told Fleming that he threw his wife onto the couch and her head hit the table. Appellant stated that he then picked Linnie up and fell through the wall with her and that there were splinters on her head as a result. After falling through the wall, appellant then threw Linnie in the bed. Appellant also stated

---

[1] Fleming testified in the State's case-in-chief.

that he lit a cigarette and put it in Linnie's hand and "just let it burn down to the bone." Fleming also testified that appellant was asking him what appellant "could get away with." Appellant was "talking about how he can, you know, get away with something and that they didn't have no evidence of what he was doing, you know, what he did." When asked whether appellant seemed remorseful about what happened, Fleming replied, "No, not really. He just talked lengthy about it; and he was angry, you know. He wanted to kill people, you know." On cross-examination, Fleming clarified that appellant did not fall through the wall—appellant fell while carrying Linnie and Linnie went through the wall.

In a recorded telephone conversation placed from the jail, appellant remarked that he "chunked [Linnie] around a lot."

At trial, appellant testified that the door was stuck when he came home. As he waited outside for Linnie to come to the door and turn the inside knob, he saw her slip on a loose tile and fall to the floor. With some effort, he forced the door open and entered the house. He found Linnie with burns on her fingers and lip, dried blood in her nostrils, a knot on her forehead, and a chipped tooth. He also noticed that some of her hair was gone and had been burned up. He dragged Linnie to the couch, but after he sat her up, she fell face down onto the coffee table. He then dragged her to the bedroom, but he fell, and Linnie's head went into the wall paneling. He then picked her up and threw her on the bed. He also testified that he awoke in the middle of the night to find the bed wet. Believing that Linnie had urinated on the bed, he pushed her off the bed, and she "hit the floor."

Appellant also stated that, after finding Linnie to be non-responsive the next morning, he tried to revive her through CPR. After those efforts failed, he went to a neighbor's house.

Although appellant acknowledged that everyone in the jail talked about what they were

accused of, he denied telling Fleming what Fleming said he did. At some point during trial, appellant asked the trial judge if he could tell Linnie's mother that he was sorry. During his testimony, appellant explained that he wanted to say he was sorry because he was sorry she lost her daughter. When asked, "Did you intentionally kill Linnie?" appellant replied, "No, I didn't. I wouldn't kill anyone." Defense counsel then followed up with, "Did you kill her?" Appellant replied, "No. I didn't kill my wife."

### 3. *The Physical Evidence and Medical Testimony*

A police detective testified that appellant had cuts or abrasions on his hand that appeared to be from a physical fight. Law-enforcement officials testified that a struggle, assault, or violence appeared to have occurred in the bedroom and that the scene appeared to have been cleaned and the body staged. Appellant's and Linnie's blood was found on various items throughout the house.

The assistant medical examiner testified that the injuries suffered by the victim were caused by "inflicted, blunt-force trauma." Some of these injuries were consistent with being grabbed or moved. Some of the victim's hair had been pulled out of her head, causing bleeding under the scalp. Bleeding in the victim's brain suggested that significant force had been used upon her, and the base of her neck was completely severed. In addition, she had some cracked ribs and bruising on her left lung. Her liver was also lacerated, and there were fractures at the bottom of her rib cage that had resulted from significant force.

Although some of Linnie's injuries were consistent with those sustained by intoxicated individuals, the assistant medical examiner testified that "the extent and magnitude of the injuries is far and above anything that I have seen in association with intoxicated individuals and is beyond any scenario that I have heard of or read about of self-inflicted injuries beyond somebody jumping

off a building or something of that nature." The assistant medical examiner also testified that intoxicated individuals rarely injure themselves severely and it was extremely unlikely that Linnie caused her own injuries by falling. Rather, her injuries were consistent with being thrown, forcibly pushed, or accelerated.

The assistant medical examiner acknowledged that the fact that Linnie had a plate in her neck meant that "a significant amount less pressure" was required to cause the injury that he observed. He explained:

> What the presence of the plate and the effects of that operation tells me is that the injuries she sustained, this extreme injury normally seen in very severe, blunt-force trauma, such as car wrecks, falls from heights, things like that, could occur with significantly less force. So the fused neck would not flex like a normal person's neck would and would, in fact, act as a lever, which indicates to me that less force than I would have expected for that sort of injury was required to cause that injury. That is not to say that significant force was not required. It's just that the forces involved were less than these extreme examples of falling off, you know, a balcony or getting in a car wreck.

The assistant medical examiner concluded, nevertheless, that the injuries did not comport with the story given but were "suggestive more of a spectrum of inflicted injuries and subsequent manipulation of the body, which . . . suggests that this was a homicide versus an accident." He further concluded that Linnie "died as a result of blunt-force injuries and the associated hemorrhage and spinal cord trauma," "that it was a homicide," and that Linnie's injuries were "inflicted rather than accidental."

The assistant medical examiner agreed with the prosecutor that, "[i]f a person intentionally or knowingly inflicted the injuries" found in the autopsy, then "a reasonable person that inflicted [those] injuries should have anticipated that she might likely die as a result of those injuries."

### B. Jury Charge

The jury charge included instructions on two theories of murder: (1) intentionally or knowingly causing the death of an individual, and (2) with the intent to cause serious bodily injury, committing an act clearly dangerous to human life that caused the death of an individual.[2] The jury charge also included instructions on the lesser-included offense of aggravated assault.[3] Appellant requested the submission of lesser-included-offense instructions on manslaughter and criminally negligent homicide (which are based upon the culpable mental states of recklessness and criminal negligence respectively),[4] but those requests were denied.

### C. Court of Appeals Opinion

The court of appeals analyzed appellant's complaint regarding the denial of the lesser-included-offense instructions under a two-part test: (1) whether the lesser offense is in fact a lesser-included offense of the charged offense, and (2) whether "there is some evidence that, if the defendant is guilty, he is guilty *only* of the lesser offense."[5] The court of appeals concluded that appellant met the first part of the test.[6] But the court decided that appellant did not meet the second

---

[2] *See* Tex. Penal Code § 19.02(b)(1), (2).

[3] Appellant's indictment included an aggravated-assault count, but aggravated assault was submitted in the jury charge only as a lesser-included offense of murder. The aggravated-assault instructions encompassed the theory of intentionally or knowingly causing bodily injury and using or exhibiting a deadly weapon. *See* Tex. Penal Code §§ 22.01(a)(1), 22.02(a)(2).

[4] *See* Tex. Penal Code §§ 19.04(a), 19.05(a); *see also id.*, § 6.03(c), (d).

[5] *Sanders v. State*, No. 09-10-00047-CR, slip op. at 8 (Tex. App.–Beaumont April 6, 2011) (not designated for publication) (emphasis in *Sanders*).

[6] *Id.* at 9-11. In doing so, the court of appeals rejected the State's argument that the first part of the test was not met because manslaughter and criminally negligent homicide were not lesser-included offenses of the second theory of murder alleged in the charge, involving an intent to cause

part of the test—the "guilty only" prong—because there was "other evidence showing that [he] acted intentionally."[7]  The court of appeals pointed to the following as evidence of appellant's intent:

> Law enforcement officers observed evidence at the scene that indicated that Linnie's death was not accidental.  Sanders told various witnesses that he fought with Linnie over drugs and that he became angry.  Hines [the assistant medical examiner] testified that Linnie's hair had been pulled out of her head, that her injuries were consistent with being grabbed, and that her injuries were caused by being accelerated, thrown, or forcibly pushed.  Hines testified that Linnie's injuries were inflicted and intentional, not accidental.[8]

In support of its holding, the court of appeals cited, *inter alia*, *Cardenas v. State*.[9]

## II. ANALYSIS

A defendant is entitled to an instruction on a lesser-included offense if the following two-pronged test is satisfied: (1) the lesser offense must qualify as a lesser-included offense of the offense charged,[10] and (2) some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense.[11]  With respect to the second prong, "[t]he evidence must establish that the lesser-included offense is a valid, rational alternative

---

serious bodily injury.  *Id.* at 10-11.  The court of appeals concluded that the first part of the test was met because manslaughter and criminally negligent homicide were lesser-included offenses of the first theory of murder alleged in the charge, involving an intentional or knowing killing.  *Id.* at 11.

[7] *Id.* at 12.

[8] *Id.*

[9] *Id.* (citing *Cardenas*, 30 S.W.3d 384 (Tex. Crim. App. 2000)).

[10] *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011).

[11] *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993).  *See also Goad*, 354 S.W.3d at 446.

to the charged offense."[12]  But evidence from any source can raise the issue,[13] and that evidence is sufficient to support submission if it amounts to "more than a scintilla."[14]  This is true regardless of whether the evidence is "strong, weak, unimpeached, or contradicted."[15]  Thus, "we may not consider the credibility of the evidence and whether it conflicts with other evidence or is controverted."[16]

Appellant contends that Fleming's testimony raises the lesser offenses of manslaughter and criminally negligent homicide.  In its brief, the State raises a number of specific challenges to the sufficiency of Fleming's testimony for that purpose and the State relies upon *Cardenas* and *Mathis v. State*.[17]  I first address the State's specific challenges before discussing the significance of these cases.

First, the State points out that appellant never told Fleming what the intent behind his conduct was.  Although that is true, a culpable mental state may be inferred from the conduct of the defendant.[18]  From Fleming's description of appellant's rough handling of the victim, a rational trier

---

[12]  *Goad*, 354 S.W.3d at 446.

[13]  *Id.* ("We consider all of the evidence admitted at trial, not just the evidence presented by the defendant."); *see also Rousseau*, 855 S.W.2d at 672.

[14]  *Goad*, 354 S.W.3d at 446.

[15]  *Rousseau v. State*, 855 S.W.2d at 672.  *See also Trevino v. State*, 100 S.W.3d 232, 237 (Tex. Crim. App. 2003).

[16]  *Goad*, 354 S.W.3d at 446-47 (brackets and internal quotation marks omitted).

[17]  67 S.W.3d 918 (Tex. Crim. App. 2002).

[18]  *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991) ("Intent may be inferred from acts, words and conduct of accused . . . . [M]ental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs.").  *See also Brown v. State*, 122 S.W.3d 794 (Tex. Crim. App. 2003) (that intent or knowledge "may be inferred by acts done or words spoken" is a legitimate tool for appellate analysis but not a rule the jury should be instructed upon).

of fact could infer—at least from that evidence in isolation—that appellant acted recklessly or with criminal negligence with respect to whether his conduct would cause her death but did not act with one of the culpable mental states associated with murder. It may be argued that this evidence was also consistent with the culpable mental states associated with murder, but the submission of a lesser offense can be based upon evidence that is subject to different interpretations when at least one rational interpretation of the evidence favors submission of the lesser offense.[19]

Second, the State points out that appellant denied that he made the statements testified to by Fleming. And third, the State points out that appellant denied Fleming's account of the events and took the position that Linnie's injuries were entirely self-inflicted. But we have already explained that a lesser-included offense may be raised from any source, and the jury was free to disbelieve appellant's denials.[20] Even if appellant's denial of culpability at trial prevented his own trial testimony from raising the issue of lesser-included offenses,[21] the jury could still consider the defendant's statements that were presented by other sources, such as Fleming.[22]

---

[19] *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011); *see also Goad*, 354 S.W.3d at 449.

[20] *Schweinle v. State*, 915 S.W.2d 17, 19-20 (Tex. Crim. App. 1996) (The court of appeals erred in holding that the defendant did not raise the lesser-included offense on the ground that his testimony refuted both the greater and lesser offenses. Under *Bignall v. State*, 887 S.W.2d 21 (Tex. Crim. App. 1994), the defendant's denial of committing any offense does not automatically foreclose submission of a lesser-included offense.).

[21] That proposition is at least questionable because one could imagine a juror concluding that appellant truly believed that his actions did not result in his wife's death but that belief was wrong. I need not address whether such a conclusion would be rational under the evidence in this case.

[22] Although appellant relies solely upon Fleming's testimony on discretionary review, some of his other statements to law-enforcement agents appear to be at least consistent with appellant possessing a less culpable mental state than required for murder: that Linnie was falling down and appellant dragged her and tripped over her, that appellant thought she just needed to "sleep it off,"

Fourth, the State contends that, even if the conduct described by Fleming is accepted as having occurred—that appellant threw the victim on the sofa and she hit her head on the coffee table—that conduct was "an *intentional* act."[23]  But saying the act was "intentional" in some sense does not by itself negate lesser-included offenses.  Certainly, such conduct would amount to intentionally throwing the victim onto the sofa.  But there is no criminal offense proscribing the intentional throwing of someone onto a sofa.  Even if one concluded that such conduct described an intent to inflict bodily injury, that sort of intent would not necessarily compel a conclusion that a murder had occurred; it would also be consistent with the lesser offenses of manslaughter, criminally negligent homicide, and aggravated assault.  To hold that the "intentional" nature of the conduct implicated murder, one would further have to argue that the type of intentional conduct involved was the intent to kill (though a "knowing" killing would also suffice) or the intent to inflict serious bodily injury.  Notably, Fleming's account does not suggest that appellant intentionally flung the victim into the coffee table.

Fifth, the State contends that "[i]ntent to kill—or intent to cause serious bodily injury—can be easily inferred from the multitude and magnitude of Linnie's injuries, appellant's efforts to clean the body and crime scene after the fact, and appellant's history of abuse toward his wife."  That is true, but it does not resolve the question of whether appellant was entitled to instructions on the lesser offenses.  Saying that intent to kill could be inferred from the magnitude of the injuries just means that the evidence was legally sufficient to support conviction on the charged offense. The test for submitting a lesser-included offense is "quite different" from the test for determining the

_____

that he did not want to live without her, and that he "chunked her around a lot."

[23] Emphasis in State's brief.

sufficiency of the evidence for the charged offense.[24]  When the issue is sufficiency of the evidence, the evidence is viewed in the light most favorable to the prosecution,[25] but when the question is whether a lesser-included offense should be submitted, the evidence is viewed in the light most favorable to the defendant.[26]  A defendant's evidence may be weak or contradicted, or the State's evidence may be particularly strong, but the finder of fact gets to decide what evidence to believe.

Sixth, the State contends that falling through the wall described a true "accident," with no criminal culpability at all, and therefore, could not raise the lesser culpable mental states of recklessness and criminal negligence.  It is entirely possible that this "accident" could support a conviction for an offense with a reckless mental state.  But even if the State were correct, there was still the evidence that appellant threw the victim on the couch.

Now I turn to the decisions relied upon by the State (and by the court of appeals) for the proposition that "other evidence" can negate entitlement to a lesser-included offense.  The State claims that there comes a time in a prosecution for murder where the evidence of intent to kill or intent to cause serious bodily injury with the commission of an act clearly dangerous to human life becomes so overwhelming that any suggestion of a less culpable mental state becomes absurd and irrational.  Whatever the merits of the contention that such a case is possible, I disagree with the State's contention that "[t]his is one of those cases."

The State and the court of appeals's opinion rely upon our decision in *Cardenas v. State*.  In

---

[24] *Wasylina v. State*, 275 S.W.3d 908, 909 (Tex. Crim. App. 2009); *Hampton v. State*, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

[25] *Hampton*, 165 S.W.3d at 693.

[26] *Bufkin v. State*, 207 S.W.3d 779, 782 & n.10 (Tex. Crim. App. 2006) (citing *Campbell v. State*, 614 S.W.2d 443, 445-446 (Tex. Crim. App. 1981)).

*Cardenas*, the capital-murder defendant testified that he "lost it" and did not intend to hit the victim so hard.[27] But the evidence showed that the victim was hit multiple times, that these blows caused complete obstruction of the victim's airway, and that the victim was strangled by a ligature consistent with the towel that was found around her neck.[28] In response to a claim that counsel was ineffective for failing to request a lesser-included-offense instruction, we held: "Given the number of blows, severity of the injuries, and particularly the evidence that the victim was also strangled with the towel, appellant's statement that he 'lost it' and did not realize how hard he hit the victim does not negate the physical evidence showing an intent to kill."[29] Consequently, counsel was not deficient for failing to request an instruction.[30]

In *Cardenas*, the defendant's testimony that he did not intend to hit the victim so hard said nothing about whether he intended to strangle the victim with a ligature. The cause of death was asphixiation by ligature and blows to the neck, and the defendant's testimony failed to account for the ligature.[31] The testimony in the present case does not suffer from a similar deficiency. The assistant medical examiner testified that the mechanism of Linnie's death was blunt-force trauma. The conduct that Fleming described was consistent with that mechanism of death. Blunt-force injuries to the head could have been inflicted by hitting the coffee table or by falling into a wall (or

---

[27] 30 S.W.3d at 393.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] Further, because the lesser-included-offense issue was raised in an ineffective-assistance-of-counsel claim, the defendant's burden was higher than in this case, where the claim is straight jury-charge error.

by some of the other conduct depicted in statements or testimony from appellant). And, as far as can be ascertained from the testimony, such conduct is not inconsistent with the severing of the base of Linnie's neck because of the metal plate that made her particularly vulnerable to injury.

The State also relies upon *Mathis*. In that case the defendant claimed that his testimony that he acted "recklessly" and did not intend to kill anyone was some evidence that he acted only recklessly with respect to killing Hibbard.[32] But moments before, the defendant had shot and killed Brown.[33] We held that the defendant's testimony did "not supply evidence upon which a jury could rationally find" that the defendant's actions "were merely reckless and were not at least knowing."[34] In arriving at our holding, we relied upon *Wesbrook v. State*.[35] The defendant in *Wesbrook* also killed multiple individuals.[36] We explained that, "[a]fter witnessing the damage that resulted from his actions" with respect to the first victim, the defendant continued to fire the weapon, again at close range, into four more individuals . . . ."[37] Under those circumstances, the defendant's "own assertion that he did not intend to kill" did not raise a lesser-included offense because the record showed that the defendant "acted intentionally, or at the least, knowingly when he walked into an apartment armed with a high-powered rifle."[38]

---

[32] 67 S.W.3d at 926.

[33] *Id.*

[34] *Id.*

[35] *Id.* (discussing *Wesbrook*, 29 S.W.3d 103 (Tex. Crim. App. 2000)).

[36] *Wesbrook*, 29 S.W.3d at 113.

[37] *Id.*

[38] *Id.*

In both *Mathis* and *Wesbrook*, we observed that the defendant testified that he did not intend to kill, but we concluded that the evidence showed that the defendant acted at least knowingly. Although the practical difference between intent and knowledge may often be negligible, there are times when the difference is significant.[39] *Wesbrook*, at least, can be seen as encompassing the same theme found in *Cardenas*: The defendant's testimony was incomplete because, though he denied intent, he did not deny knowledge, and knowledge was enough to establish guilt for the offense in question.

*Mathis* is more complicated because the defendant in that case characterized his conduct as "reckless."[40] Nevertheless, *Mathis* may be read as holding simply that a defendant's use of the term "reckless" in testimony might not necessarily be the equivalent of the legal meaning of recklessness, so that it may still be true that the defendant's testimony did not in fact provide any evidence that his conduct was *merely* reckless.

But *Mathis* may be subject to more far-reaching constructions: (1) that the multiple killings made it impossible for the defendant's testimony to create a dispute about the culpable mental state, or (2) that a conclusory assertion by the defendant that he possessed the lesser mental state was insufficient to create a dispute under those circumstances. I think such constructions are plausible only with respect to the culpable mental state of "knowingly." Both *Mathis* and *Wesbrook* stated that

---

[39] *Stewart v. State*, 240 S.W.3d 872 (Tex. Crim. App. 2007) ("It is not enough that appellant *knew* that his action would impair the availability of the marihuana as evidence. He must have *intended* to impair its availability." The Court found that the evidence was legally insufficient to establish intent.).

[40] Judge Alcala recently commented that "*Mathis* . . . appears to be the only case from this Court, in which direct testimony describing a lower mental state did not require a lesser included-offense-instruction on the lower mental state." *Goad*, 354 S.W.3d at 454 n.7 (Alcala, J., concurring) (distinguishing *Mathis* from *Wesbrook*).

the record showed that the defendant acted with at least a "knowing" culpable mental state. Neither opinion said definitively that the record indisputably established an "intentional" culpable mental state. Because the culpable mental state of intentionally centers upon what a defendant wants—his conscious objective or desire[41]—I am skeptical that such a culpable mental state could ever be shown to be beyond dispute when the defendant specifically testifies that he did not intend the prohibited act or result. Knowledge, on the other hand, depends upon what information the defendant possesses.[42] If a defendant acknowledges that he possessed certain information about the consequences of his conduct (e.g. that shooting would cause someone to die because he had just shot and killed someone), a statement that he did not know that his conduct would result in those consequences (e.g. killing the second person he shot at) would seem hollow.

But regardless of which construction ought to be placed upon *Mathis* and *Wesbrook*, those cases are not this case. Appellant had not previously killed someone, so it could not be said that he must have known that his actions would result in death due to his having previously caused a death. Even if one could argue, based upon *Mathis* and *Wesbrook*, that the defendant must have known that he would inflict serious bodily injury upon Linnie because he had previously done so, the murder statute requires more than knowledge. It requires intent to inflict serious bodily injury. Moreover, without any evidence of the sequence of events or exactly how the injuries were inflicted, even appellant's knowledge with respect to serious bodily injury is subject to dispute.

## CONCLUSION

---

[41] TEX. PENAL CODE § 6.03(a).

[42] *See id.*, § 6.03(b) ("A person acts knowingly, or with knowledge, with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result.").

Our holdings in cases such as *Mathis*, *Cardenas*, and *Wesbrook* have generated confusion regarding lesser-offense instructions. We should clarify that those cases do *not* stand for the general proposition that overwhelming evidence of a charged offense can foreclose submission of a lesser-included offense. While the lesser offense must still be a "valid, rational alternative" to the charged offense, the analysis proceeds from an assumption that the jury believes the evidence that raises the lesser offense. Overwhelming evidence of a charged offense is highly probative of whether a defendant was actually harmed by the failure to instruct the jury on a lesser offense, but once the lesser offense is raised by the evidence, an instruction is appropriate regardless of whether the evidence is "strong, weak, unimpeached, or contradicted."

I would hold that the court of appeals erred in concluding that other evidence of intent negated the evidence from Fleming that suggested that appellant's conduct was reckless or negligent rather than intentional or knowing. I would also hold that the court of appeals erred in its overall holding that the evidence did not raise the lesser-included offenses of manslaughter and criminally negligent homicide.

I would reverse the judgment of the court of appeals and remand this case for further proceedings. Because the Court does not, I respectfully dissent.

Filed: April 4, 2012
Do Not Publish